UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   **08-20094**
**CIV-MARTINEZ**

**MAGISTRATE
BANDSTRA**

PETER CUERVO, for and in
behalf of himself and other employees
similarly situated,

       Plaintiff,

v.

THE CITY OF CORAL GABLES,

       Defendant.

_____/

## COMPLAINT

Plaintiff, Peter Cuervo, for and in behalf of himself and other employees similarly situated, by and through his undersigned counsel, sues Defendant, City of Coral Gables, and alleges:

### JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to 28 U.S.C. § §1331 and 1337, and pursuant to 29 U.S.C. § 216 because this suit presents a federal question as to whether the defendant has violated the provisions of the Fair Labor Standards Act, as amended (the "FLSA"), 29 U.S.C. § 201-19. Plaintiff reserves the right to seek opt in plaintiffs who are similarly situated.

2. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391 (b) and (c) because Defendant City is a municipality located in this judicial district and committed the acts complained of in this district.

## PARTIES

3.  Plaintiff, Peter Cuervo, is a United States resident who lives in Miami-Dade County, Florida, within the jurisdiction of this Court.  Mr. Cuervo is an employee of Defendant and brings this action for compensation and other relief under the FLSA.

4.  Defendant, City of Coral Gables, is a is a municipality located in Miami-Dade County at 405 Biltmore Way, Coral Gables, FL 33134.  Defendant is an Employer, as that term is defined under the FLSA.

## FACTUAL ALLEGATIONS

### COUNT I - UNPAID OVERTIME

5.  Plaintiff has been employed by the Defendant's Police Department for nineteen years and is paid $2,904.25 for eighty (80) hours of work at the rate of approximately $36.30 per hour.

6.  Defendant entered into a Collective Bargaining Agreement (hereinafter "CBA") with the Coral Gables Fraternal Order of Police in 2003. A copy of the CBA is attached hereto as Exhibit A.  Article 14 (Workweek, overtime and shift differential) of the CBA provides that bargaining unit employees are entitled to a shift differential of either five percent or seven percent, depending on  when the majority of their shift is performed:

> i. Members who are assigned to a permanent regular work shift or temporary shift having the major portion of the hours scheduled between the hours of 5:00 P.M. and 10:00 P.M. shall receive five percent (5%) additional compensation above regular rate of pay. Members of the bargaining unit who are assigned to a permanent regular work shift having the major portion of the hours scheduled between 10:00 P.M. and 6:00 A.M. shall receive seven percent (7%) additional compensation above their regular rate of pay . . . .

7.  Plaintiff is a bargaining unit employee covered by the CBA.

8.  Plaintiff's normal work hours are from 8 A.M. until 4 P.M. In addition, between 2003 and May 2007, Plaintiff performed work at various times for Defendant between 5:00 P.M. and

2

10:00 P.M. and between 10:00 P.M. and 6:00 A.M. and was entitled under the CBA to be paid 5% and 7% additional compensation, respectively.

9.  From 2003 until May 2007, Defendant did not pay Plaintiff for overtime in accordance with the FLSA by failing to include the appropriate shift differential in his regular rate of pay for computation purposes.

10. Section 207(e) of the FLSA provides that "the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee. . . ." 29 U.S.C. § 207(e). Defendant City is required, under the FLSA, to compute Plaintiff's rate of overtime compensation on his regular rate of pay.  Plaintiff's regular rate of pay should have included Plaintiff's shift differential.

11. Plaintiff's overtime rate of pay was not inclusive of all remuneration for employment between 2003 and May 2007.

12. By reason of the foregoing, the Defendant has violated the overtime provisions of the FLSA, 29 U.S.C. § 207.

13. Because of the Defendant's willful, intentional and unlawful conduct, the Plaintiff has suffered damages, incurred costs and is also entitled to receive attorneys' fees.

14. As a result of Defendant's willful violation of the FLSA, Plaintiff is also entitled to liquidated damages in an amount equal to his actual damages.  29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, Peter Cuervo, demands judgment against Defendant, City of Coral Gables, for the overtime wages due to him for the overtime hours worked by him and for which he has not been properly compensated by Defendant, the liquidated damages in an amount equal to actual damages, reasonable attorneys' fees and costs of suit, and for all other relief the Court deems just and proper, including pre-judgment interest.

3

## DEMAND FOR JURY

Plaintiff demands trial by jury for all issues so triable.

Dated:  January 11, 2008
        Miami, Florida

                          Respectfully submitted,


                    By: _____
                          Kathleen Phillips (Florida Bar No. 287873)
                          E-Mail: kphillips@phillipsrichard.com
                          PHILLIPS & RICHARD, PA
                          9360 S.W. 72nd Street, Suite 283
                          Miami, Florida 33173
                          Telephone: (305) 412-8322
                          Facsimile: (305) 412-8299
                          Attorney for Plaintiff Peter Cuervo

AGREEMENT

BETWEEN

FRATERNAL ORDER OF POLICE, CORAL GABLES LODGE
NUMBER 7

AND

THE CITY OF CORAL GABLES

OCTOBER 1, 2003 – SEPTEMBER 30, 2005



EXHIBIT

A

| ARTICLE (S) | NUMBER | PAGE |
|---|---|---|
| AGREEMENT | 1 | 1 |
| ANNUAL LEAVE | 31 | 49 |
| APPENDIX | A | 50 |
| ARBITRATION | 13 | 16-17 |
| BEREAVEMENT LEAVE | 39 | 61 |
| BULLETIN BOARDS | 34 | 53 |
| CITYS OBLIGATION | 47 | 72 |
| DEATH BENEFITS | 42 | 65 |
| DEPARTMENTAL RULES & REGULATIONS | 8 | 8 |
| DISABILITY LEAVE | 24 | 40-41 |
| DRUG AND ALCOHOL POLICY | 44 | 67-69 |
| DUES DEDUCTION | 6 | 6 |
| DURATION OF AGREEMENT | 48 | 73 |
| EMPLOYEE ORGANIZATION AND PRESIDENT | 29 | 47 |
| FAMILY LEAVE | 35 | 54 |
| GRIEVANCE PROCEDURE | 12 | 14-15 |
| GROUP HEALTH | 40 | 62-63 |
| HOLIDAYS | 23 | 39 |
| INDIVIDUAL RIGHTS | 21 | 37 |
| INTERNAL INVESTIGATION AND OBLIGATION TO THE PUBLIC | 10 | 10-12 |

| ARTICLE (S): | NUMBER | PAGE |
|---|---|---|
| LABOR MANAGEMENT/SAFETY COMMITTEE | 9 | 9 |
| LEAVE DONATION | 28 | 45-46 |
| MAINTENANCE OF EXISTING POLICY | 30 | 48 |
| MANAGEMENT RIGHTS | 11 | 13 |
| MEDICAL SCREENING | 37 | 57 |
| NON-DISCRIMINATION | 3 | 3 |
| PARKING FACILITIES | 25 | 42 |
| PERIODS OF PROBATION | 43 | 66 |
| PERSONNEL RECORDS | 7 | 7 |
| PERSONAL SERVICES | 26 | 43 |
| PROMOTIONS | 18 | 27-31 |
| PROMOTIONS - ADDENDUM "A" | 18 | 32-33 |
| PROMOTIONS - ADDENDUM "B" | 18 | 34 |
| PSYCHOLOGICAL FITNESS FOR DUTY EXAMS | 46 | 71 |
| RECOGNITION | 2 | 2 |
| REDUCTION IN FORCE | 20 | 36 |
| REOPENING OF NEGOTIATIONS | 32 | 51 |
| REPRESENTATION OF THE EMPLOYEE ORGANIZATION | 5 | 5 |
| REPRESENTATION OF THE CITY | 4 | 4 |
| RETIREE HEALTH SAVINGS PLAN | 45 | 70 |
| RETIREMENT SYSTEM | 38 | 58-60 |
| SENIORITY | 19 | 35 |

| ARTICLE (S): | NUMBER | PAGE |
|---|---|---|
| SEVERABILITY | 33 | 52 |
| SICK LEAVE | 27 | 44 |
| SPECIAL UNIT ALLOWANCES | 36 | 55-56 |
| TUITION REIMBURSEMENT & EDUCATION INCENTIVE | 41 | 64 |
| UNIFORM MAINTENANCE ALLOWANCE | 22 | 38 |
| VEHICLES AND SAFETY EQUIPMENT | 17 | 25-26 |
| WAGES | 15 | 21 |
| WAGES – ADDENDUM "A" | 15 | 22 |
| WAGES – ADDENDUM "B" | 15 | 23 |
| WORKWEEK, OVERTIME AND SHIFT DIFFERENTIAL | 14 | 18-20 |
| WORK STOPPAGES | 16 | 24 |

## ARTICLE 1

## AGREEMENT

This Agreement is entered into and by the City of Coral Gables, Florida, a municipal corporation, hereinafter referred to as the "City", and the Fraternal Order of Police, Coral Gables, Lodge Number 7, hereinafter referred to as the "Employee Organization", an organization representing certain sworn Police employees of the City of Coral Gables Police Department.

1.

## ARTICLE 2

## RECOGNITION

1.    The City does hereby recognize the Employee Organization as the sole and exclusive representative of all employees contained within the bargaining unit as indicated below.  This recognition is in accordance with the provisions of the Florida Public Employees Relations Act, Chapter 447 of the Florida Statutes.  This recognition is for the purpose of collective bargaining with respect to wages, hours and all other terms and conditions of employment.

     a.       INCLUDED CLASSIFICATIONS

           Police Officer

           Police Sergeant

           Police Lieutenant

     b.       EXCLUDED CLASSIFICATIONS

           Police Captain

           All Ranks above Captain

## ARTICLE 3

### NON-DISCRIMINATION

The parties agree not to interfere with the right of any employee covered by this Agreement to become a member of the Employee Organization, withdraw from membership from the Employee Organization, or refrain from becoming a member of the Employee Organization. There shall be no discrimination against any employee covered by this Agreement by reasons of race, creed, color, national origin, sex, Employee Organization membership or activity, or lack of Employee Organization membership or activity.

## ARTICLE 4

### REPRESENTATION OF THE CITY

1.  The City shall be represented by the City Manager, or a person or persons designated in writing to the Employee Organization by the City Manager. The City Manager, or his designated representative, shall have sole authority to conclude an agreement on behalf of the City subject to ratification by an official resolution of the City of Coral Gables Commission.

2.  It is understood that the designated representatives of the City are the official representatives for the purpose of negotiations with the Employee Organization. Any negotiations entered into with persons other than those defined herein, regardless of their position or association with the City, shall be deemed unauthorized and shall have no standing or weight of authority in committing or in any way obligating the City.

3.  The City Manager or his designated representative shall notify the Employee Organization of any changes in designation of the City's representative for the purpose of negotiations.

## ARTICLE 5

## REPRESENTATION OF THE EMPLOYEE ORGANIZATION

1.  The Employee Organization shall be represented by the President or his designee in all matters. The Employee Organization shall notify the City Manager annually of any change in the stated representative.

2.  It is understood that the Employee Organization representative or representatives are the official representatives of the Employee Organization for the purpose of negotiating with the City. Any negotiations entered into with persons other than those defined herein regardless of their position or association with the Employee Organization shall be deemed unauthorized and shall have no standing or weight or authority in committing or in any way obligating the Employee Organization.

5

## ARTICLE 6

### DUES DEDUCTION

1. Any employee covered hereunder, who has submitted a properly executed written dues authorization card or statement to the City Manager or designee may have membership dues in the Employee Organization deducted from the employee's wages. Dues shall be deducted the first pay period of each month, and shall, within ten (10) workdays of the first pay period be transmitted to the Employee Organization. An authorized representative of the Employee Organization shall pick up the aforesaid dues at the City's Finance Department and shall sign a form furnished by the City acknowledging receipt of the dues. The Employee Organization shall furnish, in writing, the names of the employees authorized to pick up the dues and shall promptly notify the City of any additions or deletions. The City shall have no responsibility or any liability for any monies once picked up by the Employee Organization, nor shall the City have any responsibility or any liability for the improper deductions of dues. Further, the Employee Organization shall hold the City harmless for non-intentional errors in the administration of the dues deduction system, although the City shall exercise reasonable care to insure accuracy in said transaction.

2. It shall be the responsibility of the Employee Organization to notify the City Manager or designee of any change in the amount of dues to be deducted at least thirty (30) days in advance of said change. Under no circumstances shall the City be required to deduct Employee Organization fines or penalties from the wages of any member.

3. Any employee covered hereunder may, at any time, through written notification to the City and the Employee Organization have the City cease deducting dues from wages.

6

## ARTICLE 7

### PERSONNEL RECORDS

1.  Bargaining unit members covered by this Agreement shall be provided a copy of all documents at the time those documents are placed in their individual personnel files. Bargaining unit members covered by this Agreement shall have the right to inspect their official personnel files, wherever located; provided, however, that such inspection shall take place at reasonable times. The members shall have the right, at their own expense, to make copies of any item contained in their personnel files.

2.  Bargaining unit members covered by this Agreement shall have the right to file a written response to any letter or reprimand or other document, which is hereafter placed in the member's official personnel file as a result of supervisory action or citizen complaint. At the member's request, any such written response shall be included in the member's official personnel file together with the letter of reprimand and other document against which it is directed. In the event a City and/or Departmental investigation results in a member being exonerated from allegations based on a written complaint filed by a member of the public, said written complaint shall be removed from the member's official personnel files upon the member's written request.

3.  To the extent permitted by law and in order to protect the privacy and promote the safety of individual police officers, the City agrees not to directly or indirectly furnish the news media or the public with any member's home address, telephone number, and/or photograph without first obtaining express written consent. This provision does not preclude the City and/or the Police Department, from furnishing any information for official law enforcement purpose, either for its own use or when required by any other law enforcement or judicial entity.

## ARTICLE 8

## DEPARTMENTAL RULES AND REGULATIONS

1.  It is agreed and understood that each new departmental rule, regulation, policy, procedure, etc., or supplement to, revision of, or clarification of same, may have the effect of significantly modifying the members present working conditions. This bargaining unit reserves the right to have input during or after the formation of, or change to, said departmental rules, regulations, policies and procedures, and to review same prior to general distribution. This will be accomplished by having the President or designee of the Employee Organization be in attendance at professional standards meetings or that segment of staff meetings where professional standards are formulated and/or discussed. Any new departmental manuals shall become effective upon the general distribution of same to the members covered by this Agreement.

2.  Recognizing that from time to time the Chief, the Employee Relations Director, the City Manager and/or other authorized departmental and City management officials will be required to issue memoranda or written directives, which supplement, revise, amend, or clarify departmental and City rules, regulations, and procedures, the parties agree that the members covered hereunder shall be entitled to receive copies of all such memoranda and written directives issued subsequent to the execution date of this Agreement. Nothing contained herein shall require distribution to the members of any memorandum, directive, or other document, which, by its terms or intent, is limited in application to specific individuals, assignments, incidents and/or occurrences, or expires within a fixed period of time, or is purely informational in nature. These routine documents (as distinguished from memoranda and written directives supplementing, revising, amending, or clarifying departmental rules, policy, and/or procedure of general and long term application) shall continue to be posted on departmental bulletin boards in accordance with pre-existing departmental practice. The Chief and/or other authorized departmental and City management officials may require written acknowledgment of all written directives or other documents by the individuals receiving said directives or other documents.

3.  Recognizing that the promulgation of departmental and City rules, regulations, policies, and procedures, is within the exclusive purview of the City acting through its Chief of Police, the Employee Relations Director and/or City Manager the parties agree that notwithstanding any provision of this Article, every departmental and City rule, regulation, policy and procedure presently in effect shall remain in effect until such time as a particular rule, regulation, policy or procedure is expressly altered through the issuance of a written memorandum or directive or the revision of the departmental or City manuals entitled "Revised Rules and Regulations of the Police Department of the City of Coral Gables, Florida" and "Personnel Rules and Regulations, City of Coral Gables, Florida."

## ARTICLE 9

### LABOR-MANAGEMENT / SAFETY COMMITTEE

1.  There shall be a Labor-Management / Safety Committee consisting of three (3) management representatives designated by the Chief of Police, and three (3) bargaining unit employees designated by the President of the Employee Organization. The Labor-Management / Safety Committee shall meet as needed but not less than quarterly.

2.  The function of the Committee shall be to discuss general matters pertaining to employee relations and safety issues. Employee Organization Committee members, who are off duty at the time of a Committee meeting, shall be compensated for attending an officially designated Labor-Management / Safety Committee meeting. Those that are on duty shall also be entitled to attend without loss of pay or reduction in accrued leave.

ARTICLE 10

INTERNAL INVESTIGATIONS AND

OBLIGATION TO THE PUBLIC

1.   The parties recognize that the security of the City of Coral Gables and its citizens depends to a great extent upon the manner in which the members covered by this Agreement perform their various duties. Further, the parties recognize that the performance of such duties involves those members in all manner of contacts and relationships with the public and that out of such contacts and relationships, questions may arise or complaints may be made concerning the actions of members covered by this Agreement. Investigation of such questions and complaints must necessarily be conducted by, or under the direction of the Chief of Police or his designee whose primary concern must be the security of the City of Coral Gables and the preservation of the public interest.

2.   In order to maintain the security of the City of Coral Gables and protect the interests of its citizens, while, at the same time, safeguarding the rights of individual members of the bargaining unit (hereafter referred to as "member"), the parties agree that the City must have the right to conduct investigations of citizen's complaints and matters of internal security; provided, however, that any investigative interview of a member, which investigative interview could lead to a disciplinary action, demotion, or dismissal, shall be conducted under the following conditions:

   a.   The interview shall be conducted at a reasonable hour, preferably at a time when the member is on duty, unless the seriousness of the investigation is of such a degree that immediate action is required.

   b.   The Bargaining Organization and member under investigation shall be informed of the nature of the investigation prior to any interview; and the member shall be provided with the names of all complainants.

   c.   The Bargaining Organization and member under investigation shall be informed of the rank, name, and command of the officer in charge of the investigation and the interviewing officer. All questions directed to the officer being interviewed shall be asked by and through one interviewer at any one time, during any one scheduled session.

   d.   Interview sessions shall be for reasonable periods and shall be timed to allow for such personal necessities and rest periods as are reasonably necessary. All interviews must be held at Coral Gables Police Headquarters, insofar as possible.

   e.   At the request of any member under investigation, the member shall have the right to be represented by counsel or any other representative, who shall be present at all times during such interviews.

   f.   The formal interview of a member under investigation, including all recess periods, shall be recorded, and there shall be no unrecorded questions or statements. Members shall be entitled to a copy of their own statements made during the course of an internal investigation of them.

   g.   If the member being interviewed is under arrest or is likely to be placed under arrest as a result of the interview, the member shall be completely informed of all rights prior to the commencement of the

10

interview.

h.   No member shall be ordered to submit to any device designed to measure the truth of the member's responses during questioning; provided, however, that there shall be no restriction on the right of any member to submit to such a device on a voluntary basis.

i.   During interviews covered hereunder, questions shall be limited to the circumstances surrounding the allegations, which are the subject of the investigation. No member shall be required to submit to a psychological or psychiatric evaluation without first receiving an explanation from the Chief of Police as required by Article 46 of this Agreement.

j.   In the interest of fairness to the member under investigation, the City, insofar as is legally permissible, agrees to make no conclusion statements concerning the validity of the allegations under investigation until such time as the investigation has been completed. In the event the member under investigation, or any organization representing said member makes public statements concerning the allegations under investigation, the City shall have the right to respond in any manner it deems appropriate.

k.   In the event a member is suspended as a result of an internal investigation, the member shall be given the opportunity to utilize annual and/or compensatory leave (to the extent said annual leave and/or compensatory leave is earned) to satisfy such suspension.

l.   The City agrees that no adverse action will be taken against any member, who exercises the rights provided for in this Article.

m.   There shall be no restriction on the City's (or the department's) right to suspend any member pending further investigation of any incident or complaint; provided, however, that no member shall be suspended without pay pending further investigation of any incident or complaint for a period in excess of seven (7) calendar days. This paragraph shall not in any manner apply to situations where the Chief or his designee suspends a member without pay and provides the member with an administrative order, memorandum, letter, or other document advising of the department's determination of this matter.

n.   All records pertaining to internal investigations of members that are eligible for destruction under the criteria specified by Florida law shall be destroyed within thirty (30) days of the date that they first become eligible for said destruction. The City reserves the right, in certain circumstances, to save specific records. When records are saved the involved member(s) will be notified in writing as to the reasons why the records are being saved, and informing the member(s) of the proposed destruction date. No records will be saved, for any reason, beyond three years from the date that they were first eligible for destruction with the exception of noticed litigation. Members may invoke their rights under Articles 12 and 13 of this Agreement in regards to this section.

o.   Members covered by this Agreement shall have the right to inspect all completed internal investigation files, wherever located; provided however, that such inspection shall take place at

11

reasonable times.  The members shall have the right, at their own expense, to make copies of any item contained in their internal investigation files.  However,  expenses will be reimbursed to members or the Bargaining Unit Organization if the findings result in no sustained complaints. An internal investigation file shall be considered completed, for the purposes of this Article, just prior to being forwarded to the Chief of Police or designee, and/or staff

for final review.  The member will receive written notification that the internal investigation file has been completed.  The member shall have the right to review said file, along with a representative and/or legal counsel prior to the scheduling of and attendance at a pre-determination hearing on said investigation/file.

## ARTICLE 11

### MANAGEMENT RIGHTS

1.    The Employee Organization and it members recognize that the City has the exclusive right to manage and direct the Police Department. Accordingly, the City specifically, but not by way of limitation, reserves the exclusive right to:

    a.   Hire, promote, lay off and determine qualifications of employees;

    b.   Fire, demote, suspend (or otherwise discipline) for just cause;

    c.   Transfer employees from location to location and from time to time;

    d.   Rehire employees;

    e.   Determine the starting and quitting time and the number of hours and shifts to be worked;

    f.   Maintain the efficiency of employees by communication through supervisory personnel;

    g.   Merge, consolidate, subcontract, expand, or close the department or any part thereof or expand, reduce, alter, combine, assign or cease any job;

    h.   Control the use of equipment and property of the City;

    i.   Determine the number, location, and operation of headquarters, annexes, and divisions thereof;

    j.   Schedule and assign the work to the employee and determine the size and composition of the work force;

    k.   Formulate policy, rules and regulations;

    l.   Introduce new or improved services, maintenance procedures, materials, facilities and equipment, and to have complete authority to exercise those rights and powers incidental thereto, including the right to make unilateral changes when necessary;

    m.   Manage the City's Police Department, jobs, and job locations.

2.    If the City fails to exercise any one or more of the above functions from time to time, it shall not be deemed a waiver of the City's right to exercise any or all of such functions. Any right, power or privilege of the City not specifically relinquished by the City in this Agreement shall remain with the City.

## ARTICLE 12

### GRIEVANCE PROCEDURE

1.      In a mutual effort to provide a harmonious working relationship between the parties of this Agreement, it is agreed and understood that there shall be a procedure for the resolution of grievances between the parties and that such procedure shall cover both grievances involving the application or interpretation of this Agreement and grievances involving discharge, suspension, demotion, or any other adverse personnel action against a member covered by this Agreement.

2.      Every effort will be made by the parties to settle any grievance as expeditiously as possible. Should the grieving party fail to observe the time limits as set out in the steps of this Article, the grievance shall be considered conclusively abandoned. Any grievance not answered by Management within the prescribed time limits shall automatically advance to the next higher step.

3.      Where a grievance is general in nature in that it applies to a number of members rather than a single member, or if the grievance is directly between the Employee Organization and the Department or the City, such grievance shall be presented in writing directly to the Chief of Police, within the time limits provided for the submission of a grievance in STEP 1. The grievance shall be signed by the aggrieved members or the President of the Employee Organization. Thereafter, the grievance shall be processed in accordance with procedures set forth in STEP 5 and STEP 6.

4.      Where a grievance involves discharge, suspension, demotion, or other disciplinary action invoked by the Chief of Police or any other Department Head, the processing of the grievance shall commence at STEP 6 of the grievance procedure, within the time limits provided for the submission of a grievance in STEP 1.

5.      All other grievances shall be presented in the following manner and effort shall be made by the parties to secure the prompt disposition of such grievances.

STEP 1:      The grievance shall be reduced to writing, utilizing Police Department form#CG042, AGrievance Documentation,@ by the member and will present the form to the immediate supervisor within fourteen (14) calendar days of the occurrence of the event(s) which gave rise to the grievance. The supervisor shall forward a copy of the grievance to the Employee Organization, even if the supervisor is able to satisfactorily settle the dispute.

STEP 2:      Any grievance which cannot be satisfactorily settled with the immediate supervisor shall be forwarded within seven (7) calendar days of the receipt of the response to the Shift Commander or Administrative Lieutenant, or designee as the case may be, shall be forwarded within seven (7) calendar days after receipt of the grievance form (or such longer period of time as is mutually agreed upon), render a decision on the grievance in writing;

STEP 3:      Any grievance which cannot be satisfactorily settle with the Shift Commander or Administrative Lieutenant or designee as the case may be, shall be forwarded within seven (7) calendar days of the receipt of the response to the Division Commander or designee. The Division Commander or designee shall, within seven (7) calendar days after receipt of the Grievance form (or such longer period of time as is

14

mutually agreed upon), render a decision on the grievance in writing;

STEP 4:   Any grievance, which was referred to the Division Commander, or designee and was not satisfactorily settled shall be forwarded with seven (7) calendar days of the receipt of the response to the Deputy Chief or designee. The Deputy Chief or designee shall, within seven (7) calendar days after the receipt of the grievance form (or such longer period of the time as is mutually agreed upon), render a decision on the grievance in writing;

STEP 5:   Any grievance which cannot be satisfactorily settled with the Deputy Chief or Designee hall be forwarded within seven (7) calendar days of the receipt of the response to the Chief of Police or designee. The grievance as specified in writing in STEP 1 shall be discussed by and between the member (or if the members opts, the President of the Employee Organization) and the Chief of Police or designee within seven (7) calendar days after the completion of STEP 4. The Chief of Police, or designee shall within seven (7) calendar days after this discussion (or such longer period of time as is mutually agreed upon), render a decision in writing, with a copy to the Employee Organization.

STEP 6:   Any grievance which cannot be satisfactorily settled with the Police Chief or designee, shall be forwarded with seven (7) calendar days of the receipt of the response to the City Manager or designee, who shall within fourteen (14) calendar days of the receipt of the grievance form (or some longer period of time as is mutually agreed upon) render a decision in writing with a copy to the Employee Organization.

6.   The Employee Organization may request that any decision of the City Manager or designee, arising out of this grievance procedure be submitted to arbitration under the arbitration Article of this Agreement, by submitting a written request within fifteen (15) calendar days after receipt of the City Manager's written decision. Arbitral review of the decision of the City Manager or designee shall proceed in accordance with the provision of the arbitration Article. Either party shall be entitled to seek review of the arbitrator's decision in Circuit Court. Review in Circuit Court must be requested within 30 days of receipt of the arbitrator's award, if not the decision will be final and binding.

7.   Both parties to this Agreement understand that the grievance arbitration procedure set forth in this contract is the sole avenue of pursuing such grievance and the Trial Board is not available to members of this bargaining unit.

8.   Newly hired probationary employees shall have no right to utilize this grievance procedure for any matter covering discharge, suspension or other discipline.

9.   Members on probation for promotional purposes may utilize all provisions of this Article except when it applies to promotional probationary status.

## ARTICLE 13

## ARBITRATION

1.   In the event a grievance processed through the grievance procedure has not been resolved, either party may submit the grievance for arbitration within fifteen (15) calendar days after the City Manager, or designee, renders a written decision on the grievance. A request for arbitration shall be sent to the American Arbitration Association (AAA) requesting that it furnish a panel of five (5) names from which each party shall have the option of alternately striking two (2) names with the City going first, thus leaving the fifth, who will be the impartial Arbitrator.  The parties shall each have the option of striking two (2) panels from AAA.

2.   The City and the member (or the Employee Organization) shall mutually agree in writing as to the statement of the grievance to be arbitrated prior to the arbitration hearing, and the Arbitrator, therefore, shall confine the decision to the particular grievance thus specified. In the event the parties fail to agree on the statement of grievance to be submitted to the Arbitrator, the Arbitrator will confine consideration and determination to the written statement of the grievance presented in STEP 1 of the grievance procedure. The Arbitrator shall have no authority to change, amend, add to, subtract from, or otherwise alter or supplement this Agreement or any part thereof or amendment thereto. The Arbitrator shall have no authority to consider or rule upon any matter which is stated in this Agreement not to be subject to arbitration or which is not a grievance as denied in this Agreement; nor shall this Collective Bargaining Agreement be construed by the Arbitrator to supersede applicable laws in existence at the time of signing of this Agreement, except to the extent as specifically provided herein.

3.   Each party shall bear the expense of its own witnesses and its own representatives. The Arbitrator's fees and related expenses and expense of obtaining a hearing room, if any, shall be equally divided between the parties. Any party desiring a transcript of the hearing shall bear the cost of such transcript unless both parties mutually agree to share said cost.

4.   The parties shall make their choice of the impartial arbitrator within five (5) days after receipt of the panel from the AAA.  Copies of the Arbitrator's award made in accordance with the jurisdiction and authority under this Agreement shall be furnished to both parties within thirty (30) days of the closing of the arbitration hearing.

5.   Consistent with the provisions of the Florida Public Employees Relations Act, Chapter 447, et seq., it is mutually acknowledged and agreed that this collective bargaining agreement shall be administered within the amounts appropriated by the City Commission for funding of the collective bargaining agreement. Accordingly, and notwithstanding any other provision of this collective bargaining agreement, the arbitrator shall have no authority, power, or jurisdiction to construe any provision of law, statute, ordinance, resolution, rule or regulation or provision of this collective bargaining agreement to result in, obligate, or cause the City

to have or bear any expense, debt, cost or liability which would result, directly or indirectly, in the City exceeding the amounts initially appropriated and approved by the City Commission for the funding of this collective bargaining Agreement as agreed upon by the parties. Any such award, which contravenes or is not in compliance with the provisions of this paragraph, shall be null and void.

6.   The grievances and arbitration procedure herein shall have no application to the resolution of disputes between the parties concerning the terms of a new Collective Bargaining Agreement to replace this Agreement.

7.   Newly hired probationary employees shall have no right to utilize this arbitration procedure for any matter covering discharge, suspension, or other discipline.

8.   Members of the bargaining unit on probation for promotional purposes may utilize all provisions of this article except when it applies to promotional status.

## ARTICLE 14

## WORKWEEK, OVERTIME AND SHIFT DIFFERENTIAL

1.  The following provisions shall govern hours of work and overtime:

    a.  In accordance with existing City policy, forty (40) hours shall constitute a normal workweek for a bargaining member covered by this Agreement. Nothing herein shall guarantee any bargaining unit member payment for a forty (40) hour workweek unless the employee actually works forty (40) hours or actual hours worked and authorized compensated leave total forty (40) hours. For the purpose of this Agreement, authorized compensated leave shall mean leave compensated under existing City policy.

    b.  In the event the City elects to change the workweek schedule, the City agrees to give the Employee Organization at least sixty (60) days advance notice of the change. This paragraph shall not apply to changes in the workweek schedule of individual employees where such changes involve the reassignment of an individual employee to duties currently requiring an eight (8) hour, five (5) day workweek schedule.

    c.  In accordance with existing City policy, hours worked in excess of the regular forty (40) hour workweek shall be compensated at the rate of time and one-half of the members regular rate of pay; or, at the option of the member, and with the approval of the Chief or his designee, hours worked in excess of the regular forty (40) hour workweek shall be compensated by the member receiving compensatory leave at the rate of time and one-half for each hour worked in excess of the regular forty (40) hour workweek [except as provided in Article 23 (Holidays)]. Recognizing that the Department has an obligation to provide sufficient manpower, accrued compensatory leave may only be utilized at a time (or times) approved by the Chief, but only as provided in the Fair Labor Standards Act. Members covered by this Agreement will be allowed to save compensatory leave throughout the leave year, up to a maximum of four hundred eighty (480) hours. Members that have entered into the Deferred Retirement Option Plan (DROP), and have exercised the right to sell accumulated compensatory hours shall, only be permitted to accrue a maximum of eighty (80) hours of compensatory leave. Any balances of compensatory leave at end of each fiscal year, shall be paid to the bargaining unit member.

    d.  Nothing herein shall require the payment of the time and one-half or compensatory time (compensatory leave) when an insubstantial amount of time is worked in excess of the length of the employee's normal shift. For the purpose of this Article, an insubstantial amount of time shall be considered any period of time less than one-quarter (1/4) hour.

    e.  If a member covered by this Agreement is called in to work at a time outside his/her normal working hours, the Officer shall receive a minimum of three (3) hours pay at the rate of time and one-half (1-1/2) the Officer's regular rate of pay, or at the Officer's discretion, and with the approval of the Chief or his designee, a minimum of three (3) hours in compensatory leave (at the rate of time and one-half), except that an employee ordered to report for duty one (1) hour or less prior to normal working hours shall not be entitled to three (3) hours of minimum pay but will be paid normal overtime pay. If the Officer is required to hold-over for any reason within an hour of the normal tour of duty, it will be considered an extension of the shift, entitling the Officer to normal overtime pay. However, an employee who has not worked a forty (40) hour workweek will be compensated for the call out at the Officer's regular rate of pay

and will not have the option of selecting compensatory leave.

f.    The aforementioned minimum call out compensation and other provisions of paragraph e. of this Article shall apply to required off-duty appearances as a subpoenaed witness in the Federal, Circuit and/or County Courts on pending criminal, civil or traffic cases where the employee is involved as a witness, arresting officer, and/or investigating officer. No supervisor or official shall take action to cause the non-payment of straight time, time and one-half, or compensatory leave in circumstances wherein the member covered by this Agreement has performed work, which entitles the Officer to payment of straight time, time and one-half or compensatory time. Nothing herein shall restrict the City or the Department from altering work schedules or taking any other action to reduce the number of overtime, court time, or call out hours worked by the employees covered by this Agreement. Employees covered by this Agreement shall be given forth-eight (48) hours notice of any change in their regular hours of work.

g.    If any member is subpoenaed to appear in court under the conditions described to paragraph f. above (i.e., the paragraph dealing with required off-duty court appearances), the Officer shall not be required to appear at the police station before and/or after said court appearance. (In the event the department determines that there has been any abuse in claims for court appearance compensation, the department reserves the right to institute any procedure or system to measure, record, verify attendance at off-duty court appearances and duration of such appearances, provided that no such system or procedure shall require the **bargaining unit member** to travel to the police station before and/or after the court appearance). Compliance with the paragraph shall be a condition precedent to obtaining compensation for an off-duty court appearance under paragraphs e. and f. above.

h.    If a member covered by this Agreement works a parade or other City sponsored detail outside normal working hours said detail shall be considered a "call in" and the rate of compensation will be determined as is detailed in subsection e. of this Article.

i.    Members who are assigned to a permanent regular work shift or **temporary shift** having the major portion of the hours scheduled between the hours of 5:00 P.M. and 10:00 P.M. shall receive five percent (5%) additional compensation above regular rate of pay. Members of the bargaining unit who are assigned to a permanent regular work shift having the major portion of the hours scheduled between 10:00 P.M. and 6:00 A.M. shall receive seven percent (7%) additional compensation above their regular rate of pay. It is also understood and agreed that shift differential shall not apply to pay for time not actually worked, with the exception of sick leave, annual leave, administrative leave and compensation leave, and also that any **bargaining unit** member that works less than four (4) hours during an established shift differential time period will not be entitled to shift differential pay.

j.    Bargaining unit members designated to temporarily serve in a regularly budgeted higher position shall be compensated as follows:

    1)    If the member serves in a higher classification for a period of four (4) hours or less, the employee shall receive no additional compensation beyond the wages of their regular classification.

    2)    If the bargaining unit member serves in a higher classification for a period of more than four (4) hours, the employee shall receive additional compensation for the higher position for the total time of the

temporary service in that position.

k. All salary, overtime, and compensatory leave provisions of this Article shall be governed by the provisions of the Fair Labor Standards Act and any amendments thereof  promulgated from time to time.

## ARTICLE 15

## WAGES

1.  It is understood and agreed by both parties that bargaining unit members covered by this Agreement shall receive an across the board wage increase of two percent (2%), retro-active to October 1, 2003.  Upon ratification of the Agreement, bargaining unit members, with the exception of those members that entered the D.R.O.P. prior to October 1, 2003, will receive an across the board wage increase of three (3%). Effective October 1, 2004 bargaining unit members covered by this Agreement  shall receive an across the board wage increase of three percent (3%), with the exception of those members that entered the D.R.O.P. prior to October 1, 2003 (refer to article 38, Retirement System for further info).  Members in the D.R.O.P. prior to October 1, 2003, will receive a two percent (2%) across the board wage increase retroactive to October 1, 2003 and another one percent (1%) increase effective October 1, 2004.

2.  Effective October 1, 2004, the five percent (5%) system of merit increases (Step 1-7) shall be reinstated for eligible employees until the maximum of the pay range is reached  (maximum does not include loyalty steps).  It is understood that such merit increases shall not exceed the pay range cap for each covered classification and that a final merit increase of less than five percent (5%) may be in order in some instances.  Effective October 1, 2004 an additional two and a half percent (2.5%) pay step will be added to the maximum pay ranges.  Effective September 30, 2005 another two and a half percent (2.5%) pay step will be added to the maximum pay ranges.  Merit steps will be applied on members annual anniversary date effective on or after October 1, 2004.

3.  Members covered by this Agreement shall receive loyalty payments of five percent (5%) at ten (10), fifteen (15) and twenty (20) years of service.  No one shall be eligible to receive more than three (3) loyalty increases.

4.  The Employee Organization will pay the City fifteen hundred dollars ($1500.00) at the beginning of each calendar year quarter, which will be utilized to pay the Employee Organization President on a bi-weekly basis at the rate of two hundred thirty dollars and 76 cents ($230.76).  This amount will be included in the President's City paycheck and will be included in retirement calculations in the City Retirement System towards the three-year (3) average.  Any increase in the President's salary as determined by the Employee Organization dues paying members will be subject to the City's approval before being applied to this Article.

21

## ARTICLE 15 – ADDENDUM "A"

### F.O. P. BARGAINING UNIT

### PAY & CLASSIFICATION

| PAY GRADE | CLASSIFICATION TITLE | SEPTEMBER 30, 2002 2% INCREASE MINIMUM - MAXIMUM | OCTOBER 1, 2002 2% INCREASE MINIMUM - MAXIMUM | OCTOBER 1, 2003 2% INCREASE MINIMUM - MAXIMUM |
|---|---|---|---|---|
| 19P | POLICE RECRUIT | $35,206.34 - 47,180.12 | $35,910.47 – 48,123.72 | $36,628.68 – 49,086.19 |
| 21P | POLICE OFFICER | $38,815.40 - 52,016.12 | $39,591.71 – 53,056.44 | $40,383.54 – 54,117.57 |
| 25P | POLICE SERGEANT | $47,180.12 - 63,226.02 | $48,123.72 – 64,490.54 | $49,086.19 – 65,780.35 |
| 28P | POLICE LIEUTENANT | $54,617.16 - 73,192.34 | $55,709.50 – 74,656.19 | $56,823.69 – 76,149.31 |

| PAY GRADE | CLASSIFICATION TITLE | JUNE 8, 2004 3% INCREASE MINIMUM - MAXIMUM | OCTOBER 1, 2004 3% INCREASE MINIMUM – MAXIMUM* | SEPTEMBER 30, 2005 MINIMUM – MAXIMUM* |
|---|---|---|---|---|
| 19P | POLICE RECRUIT | $37,727.54 – 50,558.78 | $38,859.37 – 53,377.43 | $38,859.37 – 54,711.87 |
| 21P | POLICE OFFICER | $41,595.05 – 55,741.10 | $42,842.90 – 58,848.67 | $42,842.90 – 60,319.88 |
| 25P | POLICE SERGEANT | $50,558.78 – 67,753.76 | $52,075.54 – 71,531.03 | $52,075.54 – 73,319.31 |
| 28P | POLICE LIEUTENANT | $58,528.40 – 78,433.79 | $60,284.25 – 82,806.47 | $60,284.25 – 84,876.64 |

Pay increases as a result of promotions will place the bargaining unit member at the minimum of the range of the new pay grade, or at a five percent (5%) increase, whichever is greater.

*Reflects an additional Merit step as follows:
October 1, 2004 Additional 2-1/2% Maximum Salary, September 30, 2005 Additional 2-1/2% Maximum Salary (for total of 1 Merit Step of 5%)

22

## MEMORANDUM OF UNDERSTANDING
### BETWEEN THE CITY OF CORAL GABLES
### AND THE CORAL GABLES FRATERNAL
### ORDER OF POLICE, LODGE NUMBER 7

It is agreed between the parties that the intent of Article 15, Wages, section 2, as it applies to the new merit step, will be implemented as follows: Bargaining unit members that have reached their maximu merit pay steps and whose anniversary date falls on or after October 1, 2004, will receive a two and on half (2-½) percent wage increase. Bargaining unit members that have not reached their maximum merit pay steps and whose anniversary date falls on or after October 1, 2004, will receive a five (5) percent merit step instead of the previous three (3) percent step. Bargaining unit members that were to receive their last merit step increase that is less than a three (3) percent merit step will receive an additional two and one half (2-½) percent of the new merit step increase not to exceed five (5) percent. Increases that fall short of five (5) percent will result in the difference applied on their next anniversary date after September 30, 2005. Effective September 30, 2005, members will receive an additional two and one half (2-½) percent merit step increase on their anniversary date, but in no case will said increase exceed the maximum pay range in classification established by the new additional five (5) percent merit step increase.

NOTE: The new merit step of five (5) percent is divided into two (2), two and one half (2-½) step for the purpose of spreading the cost over the duration of the Agreement. Once these two steps have been applied, members that have not reached their maximum merit steps, including the ne step, will receive five (5) percent steps until they have reached the maximum pay range in classification, but may receive less than the final five (5) percent step if it will exceed the maximum pay range within said classification.


_____
María Jimenez
Assistant City Manager

Date: 8/5/04

_____
Walter C. Rogers Jr.
Fraternal Order of Police, President

Date: 8/5/04

23

## ARTICLE 16

## WORK STOPPAGES

1.  There will be no strikes, work stoppages, slowdowns, boycotts, job action, or refusal to perform assigned work by the members covered under this Agreement, or picketing in furtherance of any of the above-prohibited illegal activities. Notwithstanding the above, there shall be no picketing whatsoever m uniform by the employees covered by this Agreement.

2.  Recognizing that Florida law prohibits the activities enumerated in paragraph I above, the parties agree that any member who participates in or promotes any of the aforesaid activities may be discharged or otherwise disciplined by the City.

3.  It is recognized by the parties that activities enumerated in paragraphs 1 and 2 above are contrary to the ideals of professionalism and to the Police Department's community responsibility and that any violation of this Article would give rise to irreparable damage to the City and to the public at large. Accordingly, it is understood and agreed that in the event of any violation of this Article the City shall be entitled to seek and obtain legal and/or equitable relief in any court of competent jurisdiction.

## ARTICLE 17

### VEHICLES AND SAFETY EQUIPMENT

1.    Assigned Take Home Vehicles

   a.   In an effort to increase officer visibility in the community; reduce costs to the City in maintenance, repairs, accidents and liability, along with the State of Florida's consideration of legislation to give state-wide arrest powers to all sworn Police Officers, this twenty-four (24) hour assigned take home vehicle plan will be implemented using the following guidelines:

   1.   All non-newly hired probationary members of the bargaining unit will be provided with an assigned twenty-four (24) hour vehicle at no cost to the employee. Upon successful completion of the Field Training Riding Assignment period as a new hire bargaining unit members will be provided with an assigned twenty-four (24) hour vehicle at no cost to the employee.

   2.   Assigned vehicles unavailable due to maintenance, repairs or damage, will not require the replacement of said assigned vehicles on a twenty-four (24) hour basis. Pool cars will be temporarily assigned as replacement vehicles until a permanent assigned vehicle is returned to service or replaced. It is understood that this use of pool cars will be utilized on a first come first serve and on an availability basis.

2.    Implementation of Twenty-four Hour Vehicle Program

   a.   All take home Police Vehicles operated by the City shall comply with the standards and requirements of applicable legislation governing motor vehicle safety equipment at the time the vehicle was purchased.

   b.   All take home Police vehicles will be evaluated for replacement when they reach five (5) years of service or 60,000 miles. Replacement of take home Police vehicles at seven (7) years or 100,000 miles is mandatory. The City will use date of receipt for replacement purposes. If the vehicles are determined to be unsafe to drive prior to reaching ether the age or mileage limits, the vehicle will be removed from service and replaced as soon as possible. Replacement vehicles will not be based upon seniority.

3.    Use of Assigned Twenty-four Hour Vehicle

   a.   Twenty-four hour vehicles will only be used for travel to and from the employee's home, or to any function within the scope of official duties.

   b.   Twenty-four hour vehicles will only be used for personal reasons within the boundaries of the City of Coral Gables. The Employee Organization will encourage their members to make their personal purchases at locations within the City of Coral Gables.

   c.   Department policy on the use and operation of Police vehicles will apply.

   d.   It is understood that violations of departmental policy may result in the employee organization member losing use of a twenty-four hour vehicle, this will, of course, occur after progressive discipline is exercised.

25

e. All vehicles will be preventively maintained on a regular scheduled basis. Failure by the bargaining unit member to fulfill the preventative maintenance schedule may result in disciplinary action, including the loss of take home vehicle privileges. It shall be the responsibility of the Motor Pool and police supervision to advise bargaining unit members when scheduled preventive maintenance due.

f. The one county rule will be in effect. Twenty-four hour vehicles will only be driven one (1) county beyond Dade County, unless approved by the Chief of Police.

g. Officers traveling to and from residences on official business shall take action or assist persons needing help within the City of Coral Gables. Outside Coral Gables the officer will provide initial Police services, as needed for public well being.

h. Bargaining members traveling within the State of Florida to attend union functions will be permitted to use their assigned take home vehicles. Prior notification must be given to the Chief or designee. The Employee Organization will be responsible for all fuel purchases during such travel.

i. The President of the Employee Organization shall be permitted to transport organization employees in the assigned or designated vehicle when the need arises. The transportation of these employees shall be limited to the Miami-Dade County area.

j. Bargaining unit members will be permitted to have only the outside of their vehicles exteriors washed two (2) times monthly. Additionally the members may have the outside exterior, the interior and windows of their vehicles cleaned once monthly. The described cleaning will be at City's expense. The City will provide the service or designate a business of its choice within reasonable distance of the City to provide the service.

26

# ARTICLE 18

## PROMOTIONS

1.  The positions and ranks presented below are those available through the promotional process, which are outlined in this Article. All other positions are by special appointment by the Chief of Police.

    a.  Police Sergeant: Effective January 1, 1998, any full-time Police Officer with five (5) years of continuous service from the date on which the oath of office was administered as Police Officer with the Coral Gables Police Department and a two (2) year college degree from an accredited college or 60 credit hours from an accredited college or university, will be eligible to take the promotional examination for Police Sergeant.

    b.  Police Lieutenant: Effective January 1, 1996, only Police Sergeants who have two and one-half (2.5) years of continuous service as Police Sergeants with the Coral Gables Police Department and a two (2) year college degree from an accredited college or 60 credit hours from an accredited college or university, will be eligible to take the promotional examination for Police Lieutenant.

    c   Police Captain: Effective January 1, 1996, only Police Lieutenants who have two (2) years of continuous service as Police Lieutenants with the Coral Gables Police Department and a two (2) year college degree from an accredited college or 60 credit hours from an accredited college or university will be eligible to take the promotional examination for Police Captain.

    d   Bargaining unit members taking promotional examinations, who were administered their oath of office prior to April 17, 1991 or were in the application process on the date, will be exempt from the college requirements listed above in Paragraph a, b or c.

    e.  Certified transcripts from the college or university registrars office and/or the proof of degree must be submitted by the member to the Police Department Training Section.

    f.  Verification of college credits/degree will be provided to Employee Relations by the Police Department Training Section.

2.  The Employee Relations Director or designee shall be assigned the responsibility and authority to administer all facets of the promotional process as set down by either this article or the Promotional Committee which consists of both City and employee organization members.

3.  The Employee Relations Director will conduct promotional examinations as deemed necessary and in compliance with the contract established with the Fraternal Order of Police - Lodge Number Seven (7). The examinations, which will include a written and oral evaluation, must be job related, content valid, and be consistent with the Equal Employment Opportunity Commission uniform guidelines on employee selection procedures.

4.  Employee Relations will issue a written examination announcement at least 120 days prior to the testing date the announcement will:

27

    a.   Delineate the position being tested for and its eligibility requirements.

    b.   Indicate date, time and location of the written exam.

    c.   Explain the application process and deadline date.

    d.   Specify scoring procedures and qualifications for the eligibility list.

    e.   Provide any additional pertinent information.

5.    Attached to the announcement will be a list of the study materials.

6.    City and Department developed study materials will be made available to candidates through the Police Research & Development Section. Necessary books will be obtained by the candidate.

7.    Employee Relations will forward announcements to the Chief of Police who will give them to eligible candidates as soon as possible. The announcement will also be posted at the Police Department by the Chief of Police or designee.

8.    Applications will be made available to prospective candidates through the Chief of Police and in the Employee Relations Department.

9.    The testing consultant hired by the City will develop reading lists, and content-valid written and oral testing instruments, derived from a job analysis process to be conducted using City of Coral Gables Police Department subject matter experts. The testing consultant will conduct the scoring and determine the weights for the written and oral examination, based upon the job analysis including five percent (5%) for seniority.

10.    The oral examination process will be developed during the job analysis. It will be administered by the testing consultant and will consist of approximately three (3) to five (5) questions. The candidates= oral responses to the questions will be recorded on film for viewing and scoring by assessors trained by the testing consultant this process will continue to be utilized unless the City and union agree to a different process. Orientation sessions will be provided by the testing consultant, prior to the day of the oral exams, to provide interested candidates with an overview of the oral exam process. Interested candidates will also have an opportunity to attend a feedback session to review their individual written and oral examination results and, if requested, view their oral exam videos.

11.    The written and oral evaluations for promotional examinations will be administered by Employee Relations or the testing consultant in the following manner:

    a.   Tests will be administered during normal working hours.

    b.   On duty bargaining members will not be required to utilize any leave time to attend promotional exams.

Bargaining members will not be compensated for attending promotional exams while off duty.

12.     The final scores of the written test, oral exam and seniority points will be made available to respective candidates. The request for all other documentation will fall under F.S.S. Chapter 119 (Public Records) following the completion of the examination process.

13.     Whenever a budgeted promotional vacancy exists in a sergeant, lieutenant or captain classification, the City shall fill such vacancy within thirty (30) days, or longer if mutually agreed upon in writing by both parties, from the appropriate eligibility list. However, the City shall not be required to fill any position which is not to be continued during the current or subsequent fiscal year. The City shall prepare a new eligibility list not later than ten (10) days after the old list expires.

14.     The establishment of promotional eligibility list occurs after the written and oral examinations are completed. The names of the candidates with standardized composite scores that are at or above one standard deviation below the mean will be placed in decreasing order on the eligibility list.

15.     Promotional examinations shall be administered every two (2) years or when an eligibility list is exhausted, for bargaining unit positions.
   a.   Once a candidates name has been placed on the eligibility list, it will remain active for a period not to exceed two (2) years from the date the list is certified.
   b.   All candidates must reapply to the Employee Relations Department each time a promotional examination announcement is published.
   c.   The eligibility list shall be posted on departmental bulletin boards throughout the department. Eligible candidates will receive written notification of eligibility.
   d.   All promotions shall be made by utilizing a Rule of Three and be in accordance with the provisions established in this Bargaining Agreement.
   e.   Whenever a member is appointed to a vacancy, the Chief of Police shall provide a written explanation of the reason(s) for being appointed to that vacancy.

16.     The written portion of the promotional exam will be graded within 15 business days of the exam date. Candidates will receive written notification of their score by the Employee Relations Director and/or the private testing consultant(s) within 20 business days. Candidates will also be notified in the written notification that they have seven (7) working days from notification to review the scored exam. Candidates shall be permitted up to seventy-five minutes to review their scored exam. Candidates who are interested in reviewing their scored written examinations will be scheduled for a written exam feedback session with the testing consultant(s) at a location specified by the testing consultant(s). At the sessions, the following procedures will

29

be implemented.

   a.   during the sessions, candidates will be provided with:

        1)   the candidates individual scored answer sheet with notation of items that were marked as incorrect, and notation of the correct answer for the items that were marked as incorrect

        2)   copy of the exam questions

        3)   an appeal form to complete and submit to the testing consultant(s) - copies of a candidate's completed appeal form will be provided to the candidate at the end of the session

   b.   no notes or recordings of any kind may be made during the session to protect the security of the exam

   c.   candidates will be permitted to bring and refer to reading materials from the exam-reading list. Reading materials from the exam reading list will not be provided by the testing consultants

   d.   appealed test items will only be considered for the following reasons:

        1)   Answer to a test item is not found in the exam reading materials listed on the exam reading list

        2)   The answer to a test item that is noted as the correct answer is inconsistent with the information provided in the specific reading list material source that the item was written from (excludes information that may relate to the test item that is found in other reading list material sources - no outside sources).

        3)   More than one correct answer for a test item is included in the specific reading list material source that the item was written from (excludes information that may relate to the test item that is found in other reading list material sources).

        4)   Candidates will receive a copy of their completed appeal form at the end of the session. Copies of any other testing materials reviewed at the session will not be provided.

        5)   Following completion of the written examination feedback session, no grievances may be filed regarding exam reading materials, test items, test answers, or scoring.

        6)   Testing consultant(s) will research appealed items to determine if an item should be sustained or deleted, based on information included in the specific reading list material source that the item was written from. Determinations, and explanations for the determinations, will be provided in writing by the testing consultant(s). The decisions of the testing consultant(s) will be final once the Employee Relations Director reviews the responses.

        7)   Final written exam scores (with any revisions that may result from the appeal process) and the written response to appealed test items will be provided to candidates, with a breakdown of final composite scores, following completion of all examination procedures.

17.    All newly promoted employees shall serve a probationary period of six (6) months. During this period, the progress of the employee will be monitored and evaluated by their immediate supervisor. Unsatisfactory performance should be noted at the earliest possible moment and brought to the attention of the affected

be implemented.

    a.   during the sessions, candidates will be provided with:

        1)   the candidates individual scored answer sheet with notation of items that were marked as incorrect, and notation of the correct answer for the items that were marked as incorrect

        2)   copy of the exam questions

        3)   an appeal form to complete and submit to the testing consultant(s) - copies of a candidate's completed appeal form will be provided to the candidate at the end of the session

    b.   no notes or recordings of any kind may be made during the session to protect the security of the exam

    c.   candidates will be permitted to bring and refer to reading materials from the exam-reading list. Reading materials from the exam reading list will not be provided by the testing consultants

    d.   appealed test items will only be considered for the following reasons:

        1)   answer to a test item is not found in the exam reading materials listed on the exam reading list

        2)   the answer to a test item that is noted as the correct answer is inconsistent with the information provided in the specific reading list material source that the item was written from (excludes information that may relate to the test item that is found in other reading list material sources - no outside sources).

        3)   more than one correct answer for a test item is included in the specific reading list material source that the item was written from (excludes information that may relate to the test item that is found in other reading list material sources).

        4)   Candidates will receive a copy of their completed appeal form at the end of the session. Copies of any other testing materials reviewed at the session will not be provided.

        5)   Following completion of the written examination feedback session, no grievances may be filed regarding exam reading materials, test items, test answers, or scoring.

        6)   testing consultant(s) will research appealed items to determine if an item should be sustained or deleted, based on information included in the specific reading list material source that the item was written from. Determinations, and explanations for the determinations, will be provided in writing by the testing consultant(s). The decisions of the testing consultant(s) will be final once the Employee Relations Director reviews the responses.

        7)   Final written exam scores (with any revisions that may result from the appeal process) and the written response to appealed test items will be provided to candidates, with a breakdown of final composite scores, following completion of all examination procedures.

17.    All newly promoted employees shall serve a probationary period of six (6) months. During this period, the progress of the employee will be monitored and evaluated by their immediate supervisor. Unsatisfactory performance should be noted at the earliest possible moment and brought to the attention of the affected

bargaining member. The City shall make every effort to train the promoted probationary bargaining member or provisional appointment for the position accepted. Repeated unsatisfactory performance may result in the return of the bargaining member to the former position held by the bargaining member. All aspects of probation are pursuant to the City Rules and Regulations and applicable articles of this Agreement.

18.   The City, Employee Relations Director or designee shall recognize and conduct all promotional examinations by the process set forth in this article. It is further agreed that the City and Employee Organization shall form a committee, when requested by either party, to evaluate, modify and monitor the promotional process. The committee will be represented equally by both the City and Employee Organization. On duty covered bargaining members serving on this committee will not have to utilize any leave to attend the promotional committee meetings and covered bargaining members will not be compensated for attending meeting scheduled while off duty. Meetings will be scheduled by mutual agreement of both sides. The committee will bring modifications to the promotional process back to the City and Employee Organization for their possible approval and adoption. If they are mutually approved, any adopted changes to the current promotional system will not have to be the subject of further, future bargaining. It is mutually agreed to that these changes will only take effect upon the written approval of the City and the Employee Organization.

19.   Provisional appointments/promotions are defined as an appointment/promotion to the next highest rank, without a current permanent opening in that rank being available at the time of the provisional appointment/promotion. Management shall make provisional appointments to positions at their discretion. Provisional appointees can only be taken from a current promotional certification list for the position being promoted too. If no list is currently certified, no provisional appointments/promotions may be made. The provisional appointment will not increase the number of permanent positions in a particular rank. The provisionally appointed/promoted bargaining member will take the next permanent position open in the particular rank. The provisionally appointed/promoted bargaining member will serve the regular probationary period with no additional probation period to be served when the employee is moved into a permanent status. If said move to permanent status occurs prior to the end of the normal probationary term, the term will continue until the normal probationary term, and any extensions, if needed, are completed. Any permanent status openings in the rank where a provisionally promoted bargaining member currently serves will be given to the senior provisionally appointed bargaining member. Seniority in the rank will be calculated from the time of the bargaining members= provisional appointment. If more than one bargaining member is provisionally appointed/promoted simultaneously, the list bargaining member who is highest on the promotional eligibility list will be senior. If the provisional appointees appointment/promotion extends beyond the life of the eligibility list from which they were taken, the bargaining member will remain in the current provisional status until the next permanent opening in their respective provisional rank. Provisional appointees are afforded all the rights and privileges of this Agreement as well as those outlined above.

31

## ARTICLE 18

## PROMOTIONS

### - ADDENDUM A -

As a result of the 1993 -1995 collective bargaining agreement between FOP Lodge #7 and the City of Coral Gables, an agreement was reached concerning an executive level position titled police Major which is excluded from the bargaining unit and the effect this would have on future Police Captains.

Employee Organization Members will be eligible to be promoted to this new position as long as members meet the following criteria:

Eligibility for appointment to the position of Police Major will require the appointee to:

1. Have continuous service as a sworn Coral Gables Police Department supervisor in the capacity of Captain, Lieutenant or Sergeant for a minimum of five years, and;

2. Have a two-year degree from an accredited college or university or have least 60-college credits in a degree seeking four-year program.

This addendum agreement is effective only while the current Chief of Police, James Skinner, serves in that capacity, and through the term of this contract. Both parties will abide by the terms of the letter on this issue signed October 9, 1997. The Chief of Police is responsible for evaluating and appointing individuals to fill openings at this, and all positions outside the scope of this bargaining agreement. Officers serving in the new level of management shall serve at the will of the Chief and may be returned to their regular Police Department position at any time. All seniority as well as merit and/or loyalty increases shall be computed and be made a part of the adjusted salary.

While serving in the executive level positions, former members of the bargaining unit shall be encouraged to compete in all promotional exams for which they are eligible. Should the former member be reachable on a promotional list, a regular title change to the new level shall be made after six (6) months of satisfactory service in the executive position. Should the Chief wish to remove the officer from the appointed position, the officer would return to the rank most recently attained in the manner as previously described.

While this addendum is in effect, the City shall have no obligation to test for the position of captain or to make appointments to the rank of Police Captain.

Upon any change in status of the current Coral Gables Police Chief, including his promotion, demotion, retirement, reassignment of responsibilities, termination, or death, this addendum to Article 18, Promotions, of the collective bargaining agreement between the City of Coral Gables and Coral Gables Fraternal Order of Police Lodge #7 shall be void, except for the following provisions:

1. Employees serving as Majors will retain their titles, unless removed in accordance with this agreement by the new Chief. The City will, however, make arrangements within 60 days of the departure of the current Chief to announce a Captain's examination.

2.   The City and the F.O.P. will arrange to meet within 14 workdays of the departure of the current Chief in order to negotiate the possibility of extending this addendum for a specified or indeterminate period of time.

Should both parties agree to an extension the City's obligation to announce and implement a promotional examination for Police Captain shall be in accord with the new Agreement.

33



## MEMORANDUM OF UNDERSTANDING
### BETWEEN THE CITY OF CORAL GABLES
### AND THE CORAL GABLES FRATERNAL
### ORDER OF POLICE, LODGE NUMBER 7

The parties agree that Article 18 Addendum A shall be extended through the duration of the current Collective Bargaining Agreement and remain in effect until such time that it is changed through the bargaining process. It is also agreed that the provisions of Article 18, section 1(d) shall apply to bargaining unit members for the selection to the position of Major.

David Brown
City Manager

Date: 8/5/04

Walter C. Rogers Jr.
Fraternal Order of Police, President

Date: 8/05/04

## ARTICLE 19

## SENIORITY

1.  Seniority shall consist of continuous accumulated paid service with the City of Coral Gables Police Department. Seniority shall be computed from the date of taking of the Police Officer's Oath. Where two [2] or more officers took the oath on the same date, their seniority standing shall be determined by their class standing upon graduation from the Police Academy, or in the case of two or more previously certified officers taking the oath on the same date, their seniority standing shall be determined by their amount of total previous employment as a law enforcement officer, with longer previous service earning a higher seniority standing than those with lesser previous service. Wherever applicable, seniority in rank shall have preference. The following matters shall be governed by seniority:

    a.   Vacations for each fiscal year shall be drawn by employees on the basis of seniority preference;

    b.   In the event of a vacancy in any division or unit (non-promotional vacancy), seniority will be considered along with skills, abilities and the requirements of the job; and

    c.   In the event of a vacancy on a shift, senior officers performing the same work on another shift shall have preference. A vacancy is defined as a permanent vacant position created by promotion, retirement, transfer, resignation, termination or death. Vacancies are not created by days off, sick leave, annual leave, training days, or temporary special duty.

    d.   In the event a vacancy occurs in the Uniform Patrol or Technical Services Division, seniority shall become effective upon the shift change.

35

## ARTICLE 20

## REDUCTION IN FORCE

In the event of a reduction in force, employees shall be reduced to force in the inverse order of their seniority in their classification. If more than one (1) classification is affected, an employee, who is to be reduced in force from a higher classification shall be given an opportunity to revert to the next lower classification. Upon reverting to a lower classification, an employee's seniority shall be determined by the date of permanent appointment to that classification. Employees shall be recalled from reduction in force in accordance with their seniority in the classification from which they were reduced in force. No new employees shall be hired in any classification until all employees on reduction in force status in that classification have had the opportunity to return to work; provided, however, that such employees are physically and mentally capable of performing the work at the time of recall. No reduced in force employee shall retain recall rights beyond eighteen (18) months from the date of reduction in force.

36

## ARTICLE 21

## INDIVIDUAL RIGHTS

Nothing contained in this collective bargaining agreement shall foreclose any member covered by this Agreement from pursuing any right or remedy available under this Agreement without representation of the Employee Organization, except that arbitration is the exclusive right of the Coral Gables Fraternal Order of Police, Walter Stathers Memorial Lodge No. 7 (Employee Organization) as per Article 12,6. The Employee Organization will not deny the right to arbitration based on non-membership to the Organization. The Employee Organization holds the City harmless on all denials to arbitration and assumes all responsibility for such denials. Further, nothing contained in this Agreement shall foreclose any member from discussing a problem directly with the immediate supervisor or other departmental official without the intervention of the Employee Organization; provided that the immediate supervisor or other departmental official agrees to discuss and/or attempt to resolve the matter outside the formal grievance procedure. Should any bargaining unit member choose to resolve issues or grievances without the intervention of the Employee Organization, resulting decisions of such will not set a precedent for the Employee Organization.

## ARTICLE 22

## UNIFORM MAINTENANCE ALLOWANCE

1.    Uniformed members of the bargaining unit shall receive a uniform allowance in the amount of Seven Hundred ($700.00) Dollars per annum, payable as follows:  Three Hundred Fifty ($350.00) Dollars during the first pay period in October and Three Hundred and Fifty ($350.00) Dollars during the first pay period in April. Members assigned to the Criminal Investigation Division and the Media Relations Unit shall receive a clothing allowance in the amount of $1,000 dollars per annum payable as follows: Five Hundred -1/2 during the first pay period in October and 2 during the first pay period in April.  Any other member of the bargaining unit designated by the Chief of Police may receive a clothing allowance up to One Thousand ($1000.00) Dollars per annum, payable as follows: Five Hundred - 2 during the first pay period in October and 2 during the first pay period in April.  No person covered under this Agreement shall receive both a clothing allowance and a uniform allowance for the same period of time.

2.    Uniformed members of the bargaining unit who are assigned to the Police Department's motorcycle unit will be allowed to have replaced when needed, as determined by the Chief of Police or his designee, any portion of their specialized unit uniforms which are made of leather, and have been damaged due to exposure to the natural elements.   Said replacement will be by City purchase order from a vendor selected by the City.

38

## ARTICLE 23

## HOLIDAYS

1.   The below-listed paid City holidays shall be granted under existing policy:

|  | 2003 | 2004 | 2005 |
|---|---|---|---|
| New Year's Day | January 1 | January 1 | January 1 |
| Martin Luther King's Birthday | January 15 | January 15 | January 15 |
| Washington's Birthday | February 22 | February 22 | February 22 |
| Memorial Day | May 26 | May 31 | May 30 |
| Independence Day | July 4 | July 4 | July 4 |
| Labor Day | September 1 | September 6 | September 5 |
| Veteran's Day | November 11 | November 11 | November 11 |
| Thanksgiving | November 27 | November 25 | November 24 |
| Day after Thanksgiving | November 28 | November 26 | November 25 |
| Day before Christmas | December 24 | December 24 | December 24 |
| Christmas Day | December 25 | December 25 | December 25 |

Floating Holidays (2)*

   * One Floating Holiday (prior contracts contained three) has been deleted from this Agreement in order assist in supporting the salary and benefits of a full-time bargaining unit president.

2.   In the interest of avoiding scheduling and manpower problems within the Department, each employee shall be required to take each of the two (2) Afloating holidays@ on a day approved by the Chef of Police or designee.

3.   If a holiday falls on an employee's off-duty day, the employee may be paid an additional day's pay at the employee's straight time rate of pay or, at the option of the employee, be given an additional day off at a time approved by the Chief of Police.

4.   If an employee is scheduled to work on a holiday, and in fact works the holiday in question, shall receive regular straight time pay for the day worked plus an additional day's pay at time and one-half the employee's regular straight time rate of pay or, at the option of the employee, be given an additional day and one-half compensation time.

   Within the Chief's discretion, an employee scheduled to work on a holiday may be allowed the day off.   In such case, the employee shall receive regular straight time pay for the holiday in question.   The one and one-half (1-1/2) provision applies to the days and dates specified in paragraph one (1) of this Article.

5.   It is agreed and understood that any additional pay or leave time received under this Article shall be at the employee's straight time rate of pay.

6.   All other matters pertaining to the administration and enforcement of the City's holiday policy shall be governed by Rule 16.0 of the City's Rules and Regulations, as amended.

## ARTICLE 24

### DISABILITY LEAVE

1.　Disability leave shall be defined as leave with pay granted to an employee for personal disability resulting in the incapacity of the employee to perform any work as directed by the City and arising directly from and out of the discharge of the employee's duties in the course of employment by the City.  Disability leave may be granted from the time of the incapacity of the employee to perform work as directed by the City to the time the employee returns to duty as determined by a physician designated by the City or the employee retirement system.  Any employee on disability leave shall be available for examination at any reasonable time to any physician designated by the City, and the failure of any such employee to be available for such examination shall automatically terminate disability leave.

2.　The decision to grant (or not to grant) disability leave to any employee and the duration of any such disability leave shall be made at the sole and exclusive function of the Employee Relations Director; provided, however, that the Employee Relations Director must make the decision to grant (or not to grant) disability leave within sixty (60) calendar days from the date of the employee's alleged incapacity to perform any work as directed by the City.  The Employee Relations Director's decision shall be based on reports from the designated doctor(s). In order to alleviate the potential financial hardship to the employee during the period in which the Employee Relations Director is investigating the alleged job-related or incurred injury for the purpose of making his decision, the City agrees to grant the employee disability leave on a conditional basis subject to strict compliance with all of the following conditions:

　　a.　The Chief of Police advises the Employee Relations Director that it has been determined that there is reasonable cause to believe that the personal disability resulting in the incapacity of the employee arose directly from and out of the discharge of the employee's duties in the course of employment with the City. Further, the Chief of Police advises the Employee Relations Director that it is recommended that the employee be placed on disability leave (on a conditional basis) pending the outcome of the Employee Relations Director's investigation and the issuance of the Employee Relations Director's decision to grant (or not to grant) disability leave.

　　b.　Disability on a conditional basis shall commence immediately upon the Chief of Police advising the Employee Relations Director of the findings and recommendations in accordance with paragraph a, above.

　　c.　In the event that the Employee Relations Director, after conducting an investigation, determines that disability leave shall not be granted to the employee alleging personal disability, the Employee Relations Director shall have the right to set off previously paid Disability Leave (i.e., Disability Leave paid on a conditional basis) against the employee's Annual Leave and/or Sick Leave, which has already been earned or will be earned in the future.

　　d.　Neither the findings and recommendations of the Chief of Police, nor the granting of disability leave on a conditional basis shall be construed as evidence that the personal disability involved arose directly from

and out of the discharge of the employee's duties in the course of employment by the City.

e. Disability leave pay shall be computed on the basis of the difference between the employee's regular straight time earnings and the benefits paid under the Florida Workers Compensation Law.

f. Injuries occurring while on authorized private detail within the City limits of the City of Coral Gables will also be governed by the provisions of this Article.

g. No employee covered by this Agreement shall accept outside employment of any kind or nature whatsoever, nor engage in any form of self-employment while on disability leave.

h. The Employee Organization and the City agree that all other conditions pertaining to payment and administration of Disability Leave shall be governed by the City's Disability Rules and Regulations.

## ARTICLE 25

## PARKING FACILITIES

1.  The City agrees to provide the existing parking facilities, i.e., the basement and fire apparatus roof, for employees covered by this Agreement.

2.  The City shall not charge any fee for the aforesaid facilities.

3   This Article shall apply only to vehicles that do not exceed the posted clearance.

42

## ARTICLE 26

### PERSONAL SERVICES

No employee covered by this Agreement will be required to perform any personal services for any officer; provided, however, that there shall be no restriction on such services being performed on a voluntary basis.

43

ARTICLE 27

SICK LEAVE

1.   Employees shall receive ninety-six (96) hours sick leave per year.  That portion of the employee's first forty-eight (48) hours of sick leave (accrued during the leave year) that is unused at the end of the leave year may be added to annual leave.  That portion of the last forty-eight (48) hours of sick leave (accrued during the leave year) that is unused at the end of the leave year shall be allowed to accumulate to a maximum of four hundred (400) hours.  Any amount above the maximum will be deposited in a trust fund (i.e., special fund) for the employee annually at the current rate of pay at the time the excess sick leave hours are credited to the employee.  Upon death or retirement of employee, the employee or heirs, as applicable, will receive payment for the first 400 hours of unused sick leave in accordance with the following formula:

|  |  |
|---|---|
| Less than 6 years service | 0% |
| 6 through 10 years of continuous service | 25% |
| Over 10 years of service | 100% |

Payment shall be at the rate earned by the employee at the time of death or retirement of employment.

2.   The parties agree that the City may take any reasonable measure to strictly administer and enforce the City's current sick leave policy in such a manner as to eliminate abuse of sick leave privilege.  With this in mind, bargaining unit members that do not use any sick leave for a period of six (6) months will be granted a bonus of eight (8) hours of administrative leave.  For the purpose of this article, accrued administrative leave must be used within six months of earning it.  Management will make every effort to allow members to use this leave within the above mentioned time frame.

3.   Medical certificates supporting sick leave requests and all other aspects of sick leave shall be governed by Rule 12.3 of the Personnel Rules and Regulations of the City of Coral Gables, as amended.

4.   No employee covered by this Agreement shall accept outside employment of any kind or nature whatsoever, nor engage in any form of self-employment while on sick leave.

5.   Actual sick leave shall be earned solely for compensable hours on an hourly basis.

## ARTICLE 28

### LEAVE DONATION

1.  Subject to compliance with the following provisions, employees covered by this Agreement may be provided the opportunity of donating accrued leave time to a designated employee whenever extraordinary circumstances require the designated employee to be absent from work due to an extended, non-work related illness or injury, and when the designated employee has exhausted all earned leave.

2.  Requests in writing for permission to solicit donations of accrued leave from departmental personnel shall be submitted to the Police Chief, who will then confer with the Employee Relations Director. In reviewing such request, consideration shall be given to the designated employee's previous leave history, as well as the nature of the illness or injury. Such written requests shall, include the employee's name, reasons for requesting such donations of accrued leave, and approximate duration of absence, if known.

3.  Upon approval of such request by the Police Chief and the Employee Relations Director, the Police Department will obtain a supply of the form referred to below (Application for Donation of Leave) from the Personnel Department, and shall distribute these forms to employees willing to donate accrued leave time. The donation must be made as a free and voluntary act and no duress or coercion shall be placed upon an employee to make such donation of accrued leave time.

4.  As forms are completed by the donors the Department will forward such forms to the Police Payroll Clerk, who will time and date stamp each form in the order it is received. Donated time will be credited to the absent employee in the order in which the forms are received. In the event of excess donations received but not used due to the employee's early recovery, resignation, retirement, or death, any donation forms received but not utilized will be voided and the time returned to the donating employees. Donation time returned to a donor shall be reflected in the leave balance on the donor's pay stub.

5.  A maximum of 240 hours of leave time donated will be permitted per individual request. Upon exhaustion of these 240 hours of donated time a request to obtain up to 240 additional hours may be addressed at the discretion of the Department Head. Any additional use of donated leave shall be at the discretion of the City Manager or designee. Employees wishing to donate time may donate up to 80 hours of accrued leave (not Floating Holidays).

6.  Donated time will be converted to a dollar value based on the current rate of pay for each donor for hours donated and on the rate of pay of each done for hours utilized. The rate of pay used for each donor will be that in effect at the time the form referred to below is signed.

7.  Time donated for this purpose will not be considered during the performance rating period, nor will it reflect a donator's right to convert leave to accrued annual leave as provided in this Agreement.

8.  The Police Payroll Clerk shall notify the Department when donated time is nearly exhausted, and the Police Chief shall have the responsibility of requesting additional donated time, if desired.

9.  The Department will immediately notify the Police Payroll Clerk of the employee's return to work or of any major change in the employee's physical condition.

---

**CITY OF CORAL GABLES**
**APPLICATION FOR DONATION OF LEAVE**

---

Please deduct from my accrued _____ Leave _____ hours.  I wish to donate the
                                                                    annual, compensatory, sick                     . # of

      hours

cash value of such leave to compensate _____, who has
currently                                                    Name of employee you wish to donate your leave to

·exhausted all accrued leave.

By my signature appearing below, I expressly acknowledge and clearly understand that the City of Coral Gables has
no obligation whatsoever to pay me, and that I will not be paid by the City for the time I am donating to the employee
identified above.  I also acknowledge and represent to the City that my donation of accrued leave is made to the
employee identified above for use in compensating that employee and that my donation is made of my free will, as my
voluntary act, and that I was under no duress or coercion to make such a donation.

NAME OF EMPLOYEE DONATING LEAVE (Print)_____

DONATING EMPLOYEE'S I.D. NUMBER_____

SIGNATURE OF EMPLOYEE_____

DATE OF THIS DONATION_____

DONATING EMPLOYEE'S DEPARTMENT/DIVISION NAME AND NUMBER

_____

DEPARTMENT HEAD APPROVAL_____

---

EMPLOYEE RELATIONS

RECEIVED BY_____

DATE RECEIVED_____

---

46

## ARTICLE 29

## EMPLOYEE ORGANIZATION AND PRESIDENT

1.    Effective January 1, 1992, the bargaining unit member serving as President of the Coral Gables Fraternal Order of Police Department Lodge No. 7 shall be detached from normal duties with the Police Department for the remainder of the term(s) of elected office and shall serve the Employee Organization as a full time officer. All normal benefits and any increases in same, including but not limited to salary, insurance, seniority, etc. will continue to be provided during the term of office *(this position is funded under the provisions of Article 23)*. The President shall be available to perform the duties of a police officer when called upon by the Police Chief or designee. A call to duty will be limited to catastrophic events requiring extreme demands on departmental resources.

2.    The President of the Fraternal Order of Police and other bargaining unit members; a total not to exceed six (6) employees or designees; appointed by the President shall be granted time off with pay to attend actual collective bargaining sessions with the City for the renegotiations of the Agreement. The Union agrees that, in the selection of designees, the manpower needs of the Department shall be paramount. The President may attend any City Board meeting that may affect the members of the Employee Organization.

3.    The Employee Organization shall be granted one thousand (1000) hours of Administrative Leave per year. Said leave may be used by any member of the Employee Organization at the direction of the President and with the discretion of the Chief of Police. That portion of the aforementioned thousand (1000) hours which is not used during the duration of the Agreement may be carried over into the following fiscal year. The transfer is to be effective on October 1st of the new fiscal year. The President of Employee Organization may be permitted to convert up to twelve (12) hours per month of the thousand (1000) hours of Administrative Leave to Compensatory Leave. Conversion is to be done annually in the month of January. The Compensatory Leave cap of four hundred eighty (480) hours shall apply. All of the converted leave in excess of the four hundred eighty (480) hour cap must be used as leave and may not be received as a cash payout.

4.    In addition the individual members of the Employee Organization will be allowed to donate up to eight (8) hours of either Annual or Compensatory Leave to a leave pool administered by the City, not to exceed 200 hours in total for each year covered by this Agreement. This donation can only be made once a year, at a time decided by the President of the organization. This pool cannot be carried over from year to year. The 200 hours or any portion thereof shall be used after the 1000 hour pool as described in section 3 of this Article.

5.    The City agrees to allow the FOP to use the email system to contact bargaining members. Various FOP email groups will be setup such as but not limited to, the FOP Executive Board, Labor Management, etc.

47

## ARTICLE 30

## MAINTENANCE OF EXISTING POLICY

1.    Except as specifically modified by this Agreement, the City shall maintain its existing policy with respect to merit increases, loyalty steps, leaves of absence, defenses of lawsuits against officers, educational training and injuries occurring while on authorized private details.

## ARTICLE 31

## ANNUAL LEAVE

1.  Each employee covered hereunder must take a minimum of one (1) week forty (40) hours annual leave or compensatory leave each fiscal year. However, any employee covered hereunder, who has accrued and earned annual leave, may request payment of said accrued and earned annual leave not to exceed eighty (80) hours, at the rate of pay in effect at the time of the request. All such payments must be requested in full hour periods. The aforementioned option may not be invoked more than once in any one (1)-leave year.

2.  Annual leave shall be earned in accordance with the schedule specified in Appendix A.

3.  Annual leave will be earned on an hourly basis for compensable hours only.

4.  The maximum accumulation of annual leave that an employee covered by this agreement can carry shall be three-hundred (300) hours, including those employees who have reached normal retirement age.

5.  The member may request payment of said earned accrued annual leave balance, or portion thereof, not to exceed one hundred and sixty (160) hours, at the rate of pay in effect at the time of the request, during the last year of employment prior to actual retirement. Said conversion will be included as pre-retirement normal income when calculating future retirement benefits.

All other aspects of annual leave shall be governed by Rule 12.2 Personnel Rules and Regulations, as amended.

ARTICLE 31
APPENDIX A
ANNUAL LEAVE SCHEDULE ADJUSTMENTS   (10/1991)

| YEARS OF SERVICE | | | | LEAVE ACCRUAL SCHEDULE | | |
|---|---|---|---|---|---|---|
| 0 | | | | 80 | | |
| 1 | | | | 84 | | |
| 2 | | | | 88 | | |
| 3 | | | | 100 | | |
| 4 | | | | 100 | | |
| 5 | | | | 100 | | |
| 6 | | | | 104 | | |
| 7 | | | | 108 | | |
| 8 | | | | 112 | | |
| 9 | | | | 116 | | |
| 10 | | | | 124 | | |
| 11 | | | | 128 | | |
| 12 | | | | 132 | | |
| 13 | | | | 136 | | |
| 14 | | | | 140 | | |
| 15 | | | | 144 | | |
| 16 | | | | 148 | | |
| 17 | | | | 152 | | |
| 18 | | | | 156 | | |
| 19 | | | | 160 | | |
| 20 | | | | 164 | | |
| 21 | | | | 168 | | |
| 22 | | | | 172 | | |
| 23 | | | | 176 | | |
| 24 | | | | 180 | | |
| 25 | | | | 184 | | |
| OVER | | | | 188 | | |

ARTICLE 32

REOPENING OF NEGOTIATIONS

1.   Except as specifically provided herein, neither party hereto shall be permitted to reopen or renegotiate this Agreement or any part of this Agreement.  This Agreement contains the entire agreement of the parties on all matters relative to wages, hours, working conditions, and all other matters which have been, or could have been, negotiated by and between the parties prior to the execution of this Agreement.

2.   The City, in its sole discretion, may reopen this Agreement for the purpose of negotiating additional provisions, or modification of existing provisions thereto where new federal or state legislation (or regulations) have created a hardship upon the City in implementing any of the terms of this Agreement.  In that case, the parties, at the City's request, shall promptly meet to negotiate such new provisions, or revisions of existing provisions, as would alleviate the hardship upon the City.

51

## ARTICLE 33

### SEVERABILITY

Should any provision of this collective bargaining agreement, or any part thereof, be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such provision or portion thereof shall not invalidate the remaining provisions of this Agreement.

## ARTICLE 34

## BULLETIN BOARDS

The City shall permit the Employee Organization to post notices, of the Employee Organization's recreational and social functions, elections, meetings (and minutes thereof), and names and addresses of officers, directors, and representatives of the Employee Organization on separate glass enclosed, lockable bulletin boards at the Police station patrol squad room, the Criminal Investigation Division, the Professional Standards Division, and the Technical Services Division. The glass enclosed, lockable bulletin boards shall be installed and maintained at the expense of the Employee Organization. A copy of each notice to be posted shall be transmitted to the Chief of Police or designee prior to posting. Under no circumstances shall the Employee Organization tender for posting any notice containing material of a political nature or material tending to, directly or indirectly, disparage any elected or appointed official or employee of the City. An officer of the Employee Organization shall sign each notice to be posted.

ARTICLE 35

FAMILY LEAVE

1. Employees covered under this Agreement shall be entitled to leaves of absence in accordance with the Family and Medical Leave act of 1993 and Rule 12.10 of the City's Personnel Rules and Regulations.

2. Whenever leave is taken under one of the other leave articles of this Agreement or the City's Personnel Rules and Regulations (e.g., disability leave, leave without pay, maternity leave), and the leave also qualifies as leave under the Family and Medical Leave Act of 1993, the leaves shall run concurrently.

3. Maternity leave shall be treated the same as other types of non-work related disability leave, as provided in Rule 12.9 of the City's Personnel Rules and Regulations (i.e., not to exceed one hundred and eighty [180] calendar days) except that a doctor's note will be required to be provided by the pregnant employee only upon request, to verify pregnancy and/or update the employee's medical condition.

4. Maternity and paternity leave under this Article is more generous than that provided for under the Family and Medical Leave Act of 1993. Eligible employees may take both leaves, however, the leaves shall run concurrently.

54

ARTICLE 36

SPECIAL UNIT ALLOWANCES

1.    The Special Unit Allowances listed below shall be provided to bargaining unit members, subject to the conditions contained in Paragraph 2, below.

| | |
|---|---|
| a. *F.T.O. | $75.00 BI-WEEKLY |
| b. *MOTORCYCLE OFFICER | $75.00 BI-WEEKLY |
| c. *K-9 | $75.00 BI-WEEKLY, effective 10-01-04 |
| d. *SWAT/SWAT NEGOTIATORS | $75.00 BI-WEEKLY |
| e. *A.I.U./TRAFFIC HOMICIDE | $75.00 BI-WEEKLY |
| f. *MARINE PATROL | $75.00 BI-WEEKLY, effective 10-01-04 |
| g. *BICYCLE/FOOT PATROL | $75.00 BI-WEEKLY, effective 10-01-04 |
| h. *UNDERWATER SEARCH AND RECOVERY | $75.00 BI-WEEKLY, effective 10-01-04 |
| i. CRIMINAL INVESTIGATIONS DIVISION | 5% INCREASE IN BASE PAY |
| j. PROFESSIONAL STANDARDS DIVISION | 5% INCREASE IN BASE PAY |
| k. HONOR GUARD | $25.00 BI-WEEKLY |
| l. ADMINISTRATION DIVISION (Members assigned directly to the Chief of Police) | $75.00 BI-WEEKLY, effective 10-01-04 |

*    Bargaining unit members assigned to more than one (1) Special Unit listed in "a, b, c, d, e, f, g, and h" above, will receive an additional $40.00 bi-weekly allowance for that assignment. Bargaining unit members assigned to the Criminal Investigation, Professional Standards and Administrative Division will receive a second Special Unit allowance of $40.00 for only d, or h, above. Members in these three (3) divisions will only receive Special Unit Allowance of $25.00 bi-weekly for "k" if they are not assigned to "d" or "h". Secondary Special Assignment allowance as it applies to "k" will not be $40.00.

        Note:   Those bargaining unit members assigned to the Professional Standards or Criminal Investigations Division at the time both parties enter into this Agreement, and are receiving a second Special Unit allowance of $50.00 Bi-weekly for "d" above will continue to receive this amount as long as eligible for the second Special Unit allowance and until such time they leave the Professional Standards or Criminal Investigations divisions.

Under no circumstances shall a bargaining unit member be entitled to more than two Special Unit Allowances. A bargaining unit member shall be entitled to a Special Unit Allowance only as long as the member is assigned to such Special Unit, in writing, by the Chief or designee. Whenever a member is removed from

such Special Unit, in writing, by the Chief or designee, the member shall no longer be entitled to receive such Special Unit Allowance.  The assignment and removal of from Special Units shall remain within the sole discretion of the Chief, or designee, and such assignment or removal shall be the sole factor in determining eligibility for such Special Unit Allowances.

2.    MASTER POLICE OFFICER---5% increase in base pay based on departmental Standard Operating Procedure # 068.  The FOP and City Bargaining Teams agree that this SOP should be reviewed by the Labor Management Committee.

3.    The Members of the Motor Cycle units shall receive 1/2 hour per day to a maximum of 2-1/2 hours per week to take care and clean their motors respectively.

4.    The Members of the Canine units shall receive 1/2 hour per day to a maximum of 3 hours per week to take care of their dogs and clean their motors respectively.  Members of the Canine unit shall receive 1/2 hour credit for every day of leave taken (per eight (8) hours of leave, seven and one-half (7-1/2) hours charged to their banks), except in cases where the dogs is being boarded when leave is taken. The City will pay the cost of boarding the canine does when the assigned canine officer is on leave and leaves the County.

## ARTICLE 37

## MEDICAL SCREENING

The City shall provide an annual medical screening for all bargaining unit members covered by this Agreement during the term of this Agreement.  The medical screenings shall be offered on a voluntary basis and shall include the following at the request of the bargaining unit member:

1.  Full blood workup.

2.  Chest x-ray.

3.  Electro-Cardiogram.

4.  Basic eye and ear exam.

5.  Any additional screenings which may be included in a routine medical screening.

6.  Maximal treadmill test every three (3) years upon reaching age forty (40).

7.  Sigmoidoscopy every two (2) years upon reaching age  forty (40).

8.  Women may receive a mammogram and pap smear every year.

9.  Colonoscopy every two (2) years upon reaching age fifty (50).

10. Bargaining unit members will be permitted to attend medical screenings on duty, however, it is understood that no member will be granted overtime or compensatory time in the event medical screenings are scheduled during off-duty hours.  Management may permit bargaining unit members to adjust their shifts to attend medical screenings on duty.  It is understood that these adjustments of shifts will not be a cause of action to implement an overtime situation.

57

ARTICLE 38

RETIREMENT SYSTEM

1. Retirement benefits for employees covered by this Agreement shall be based on the employee's highest three (3) years of employment with the City.

2. Employees covered by this Agreement shall be vested after ten (10) years of service.

3. Monthly retirement income for non-service connected disability shall be equal to one-twelfth (1/12) of 2.6% percent of the employee's total career earnings during the employee's period of credited service.

4. If a former member of the retirement system returns to the employ of the City of Coral Gables, the member may after a period of 5 years regain the previous time of employment on a day by day basis far the purposes of earned time towards retirement. Regained service time will be only time of employment after September 30, 1987. Bargaining unit members with eligible service time prior to September 30, 1987, may purchase such time on a day to day basis in accordance with Chapter 19 of the Code of the City of Coral Gables.

5. There shall be no age limit for any participant in the retirement system who wishes to buy back eligible time.

6. Effective upon ratification of the Agreement, bargaining unit members shall contribute three percent (3%) of their gross pay (excluding uniform allowances) to the City's retirement plan. Effective October 1, 2004, bargaining unit members shall contribute another two percent (2%) to the City's retirement plan for a total of a five percent (5%) contribution. The City agrees that contributions will be transferred to the retirement fund no later than seven (7) days after the members receive their paychecks. It is agreed that a re-opener will occur within ninety (90) days of ratification of this Agreement for the purpose of negotiating a change to the Cost of Living (C.O.L.A.) provision of the retirement plan. It is further agreed that the five percent (5%) contribution mentioned above will be applied to the cost of a mutually acceptable C.O.L.A. improvement. The City of Coral Gables Fraternal Order of Police, Lodge #7 agrees to equally share the expense of an actuarial study to determine the cost of a C.O.L.A. improvement. Equal share is intended to mean that the expense will be divided by all concerned parties equally. The C.O.L.A. negotiation reopener will include all active bargaining unit members, as well as members that retired on or after October 1, 2003.

7. Bargaining unit members covered by this Agreement will be eligible to retire October 1, 1993, and thereafter with the highest three (3) years of salary average if their age and years of service, as defined in the Retirement Ordinance, add up to seventy (70) or more. The factor for each year of credited service shall be 3.0. Effective upon the ratification date of this Agreement, a cap of six hundred (600) hours of overtime will apply to yearly averages as computed under the provisions of the Retirement Ordinance. The six hundred (600) hour cap will not affect averages prior to the ratification date of this Agreement.

8. Bargaining unit members covered under this Agreement in all respects except as provided herein, shall be governed by the City's Retirement Ordinance (Chapter 19- Pensions).

9.   The City and the Union have agreed to implement a Deferred Retirement Option Plan (DROP).  The basic elements of the DROP in outline form are as follows:

a.   Eligibility: A bargaining unit member may elect to participate in the DROP upon becoming eligible for normal retirement either under Section 19-32 (26) d.1 if the employee has twenty-five (25) years of service, or if the member is age sixty-five, if earlier.

b.   Election: A bargaining unit member may elect to participate in the DROP within one hundred eighty days of attaining eligibility to participate in the DROP, or if eligible as of January 1, 1999, no later than one hundred eighty (180) days from January 1, 1999.  Election to participate in the DROP becomes irrevocable at the time the member enters the DROP.

c.   DROP Period: Once elected, a bargaining member may remain in the DROP for a maximum of **sixty (60) to ninety-six (96) months** whichever is **equivalent to D.R.O.P. time provided for police management.**  Once a member reaches the end of their participation in the DROP, the member shall automatically be separated from employment with the City.

d.   Drop Benefits: Upon entry into the DROP, that bargaining unit members benefits will be calculated as of the effective date of that members DROP participation.  The monthly amount of benefits will be the same as if the participant had elected normal retirement benefits.  The participant will have the right to elect an option form of payment (such as joint and survivor).  These monthly benefits will be paid to an account within the system for the credit of the beneficiary and will be credited with interest equal to the retirement investment return from a minimum of three per cent (3%) to a maximum up to the assumption rate per year compounded annually.  Once the participant leaves the employ of the City at or any time before the expiration of the DROP account either in a lump sum, in annual or monthly installment payments whereby the participant's DROP account no longer accrues any interest, or by rollover to another qualified retirement plan as defined in Section 19-130(1).  The form of payment shall be at the participant's option.  The Retirement Board will ensure that the method of distribution does not jeopardize the tax qualification of the plan as mandated by the Internal Revenue Code.  In the event of an emergency and contingent upon the approval of the City Manager, a participant may have an extension of up to forty-five (45) days after the participant leaves the employ of the City in which to opt the manner of payment of the value of the participant's DROP account.  During the extension period of up to forty five (45) days, the participant's DROP will be credited with nine percent **the above-mentioned interest.**  The decision of whether to approve an extension rests in the discretion of the City Manager.

e.   Death and Disability Benefits: After DROP participation commences, a participant may not rejoin the system as an active employee nor shall the participant be eligible to receive disability or pre-retirement death benefits from the system.  Post-retirement death benefits will be based on the form of payment elected by the employee.

f.   Bargaining Unit Members not Electing Participation in the DROP: A bargaining unit member not electing to participate in the DROP will continue participation in the Retirement System with pay and service

continuing to accrue.

g.   Approval of the DROP: It is understood by both parties to this Agreement that implementation of the DROP is contingent upon the amendment to the Retirement Ordinance being approved by the State of Florida, Division of Retirement and the Internal Revenue Service. If not approved, the parties will re-open negotiations on the DROP.

h.   Compliance with Applicable Laws: It is understood by both parties to this Agreement that the DROP must comply with the Internal Revenue Code, especially regarding maintenance of the tax qualification of the Coral Gables Retirement System and should any portion of this Agreement be considered not in compliance with applicable laws, the parties will re-open negotiations on the DROP.  The Internal Revenue Code provisions with which the DROP must comply include but is not limited to, Section 410(a)(9) and Section 415.

## ARTICLE 39

### BEREAVEMENT LEAVE

1.    a.  Employees covered by this Agreement shall be granted time off with pay at the employee's straight time rate of pay, not to exceed ten (10) work days in the event of the death of the employees current legal spouse or an employee's child, whether natural, adopted or step, and an employee's parent (including adopted and step parents).

        b.  Up to five (5) work days (maximum) of bereavement leave with pay may be allowed to employees covered by this agreement in the event of the death of any other immediate family member (as described in the Personnel Rules and Regulations 12.5) or any other relative living in the same household. This maximum leave is to apply whether the funeral is held in or outside the state of Florida.

        c.  All bereavement leave is to be taken on consecutive work days and must start no later than five (5) calendar days after notification of the death occurs.

2.    The City reserves the right to require documentation supporting approval of bereavement leave.

61

ARTICLE 40

GROUP HEALTH

1.   On or before April 1, 1985, the Union shall establish its own hospitalization and medical insurance plan, subject to strict compliance with the following provisions:

   a.   As of the implementation date of the Union plan, said plan shall offer to cover all current, future and retired bargaining unit members, and their dependents, if dependent coverage is available under the Union plan, and if such dependent coverage is chosen by such current, future, or retired bargaining unit members. Under no circumstances shall the City have the obligation to apply the City's conventional group hospitalization and medical insurance plan or any Health Maintenance Organization (HMO) plan (in lieu of the Union plan) to any current, future, or retired bargaining unit member or their dependents, and such current, future, or retired bargaining unit member (and their dependents) shall *forfeit any* and all right to participate in the City's conventional group health and medical insurance plan and any Health Maintenance Organization (HMO) plan.

   b.   The City shall have no responsibility to process claims or perform any paperwork involving the aforementioned Union group hospitalization and medical insurance plan; except that the City agrees to continue in effect the practice of payroll deduction for group hospitalization and medical/life insurance plan in effect prior to the effective date of this Article.

   c.   The City shall have no obligation to contribute to the aforesaid Union hospitalization and medical insurance plan unless each and every current, future, and retired bargaining unit member is offered coverage by said Union plan. Further, the City shall have no obligation to contribute to the aforesaid Union hospitalization and medical insurance plan unless the dependents of each and every current, future, and retired bargaining unit member are offered the right to join said Union plan, if dependent coverage is available under the Union plan.

   d.   In the event the Union should request that the bargaining unit be reinstated to the City's conventional hospitalization and medical insurance/life insurance plan, or any Health Maintenance Organization HMO) plan, the decision to accept or reject such request for reinstatement shall be solely with the discretion of the City.

   e.   The Union's plan shall provide hospitalization and medical insurance benefits that are reasonably comparable to or higher than those provided under the City's conventional hospitalization and medical insurance/life insurance plan and/or current Health Maintenance Organization (HMO) plan available at the City.

   f.   The Union shall indemnify and hold the City harmless against any claim, demand, suit or liability, and for all legal costs ensuing in relation to the implementation or administration of the Union's hospitalization and medical insurance plan.

   g.   The Union agrees to offer coverage to current, future, and retired sworn management personnel and their

dependents, if dependent coverage is available under the Union plan, and if such dependent coverage is chosen by such current, future, or retired sworn management personnel. The union will not be required to accept any management personnel back into the plan once they have chosen to leave the plan.

h.  Claims incurred prior to the effective date of the Union's hospitalization and medical insurance/life insurance plan will be the responsibility of the City's conventional hospitalization and medical insurance/life plan or the applicable Health Maintenance Organization (HMO) plan, whichever is applicable; claims incurred after the effective date of the Union's hospitalization and medical insurance plan will be the responsibility of said Union plan.

i.  Upon request, the Union and its Health Trust administrator shall permit the City to review any records relating to claims paid; administrative costs, insurance premiums; premium structure for employee, dependent, and retiree coverage, status of the plan's reserves; the plan's retainage; past, current, and future profits; and expenses in the administration of the plan.  Provided, further, upon request, the City and its hospitalization and medical insurance/life insurance plan administrator shall permit the Union to review any records relating to claims paid; administrative costs; insurance premiums; premium structure for employee dependent, and retiree coverage; status of the plan's reserves; status of the plan's retainage; past, current and future profits; and expenses in the administration of the plan.

j.  The City agrees to contribute $335.00 per month for each employee covered hereunder from October 1, 2001, through June 30, 2002.  The City agrees to contribute $415.09 per month for each bargaining unit member covered hereunder commencing July 1, 2002. Should the monthly contribution rate per employee paid by the City for its conventional group health and medical insurance plan increase, the City will contribute the greater of $415.09 or the increased monthly contribution rate for the conventional group health and medical insurance plan.  For example, the current monthly contribution rate for the conventional group health and medical insurance plan is $391.63 per month per employee. If there is a 14% increase, the monthly contribution amount for that plan would be $446.46 (i.e. 391.63 + 54.83 (14% of increase of 391.63). Thus, the City's monthly contribution rate under this Agreement would be $446.46 instead of $415.09.

k.  Effective October 1, 2004 the City agrees to provide term life insurance coverage for each bargaining unit member. Effective October 1, 2004 the City agrees to provide term life insurance coverage for all sworn police management personnel that belong to the Union's hospitalization and medical plan.  For purposes of this provision, the term life benefit shall be equivalent to a one-time annual base salary of the applicable employee. This benefit is in addition to those described in Article 42.

## ARTICLE 41

### TUITION REIMBURSEMENT & EDUCATION INCENTIVE

1.  Employees covered by this Agreement may apply for tuition reimbursement for courses in a degree seeking educational program that is job related in accordance with the following provisions.

    a.  To receive reimbursement the course must be submitted for pre-approval to the Training Unit to be routed through the Chief of Police to the Tuition Reimbursement Committee.

    b.  Grades "C" or better shall be reimbursed 100%, grades "D" or less shall not be reimbursed.

    c.  Successful completion of a "Pass-Fail" course will be eligible for 100% reimbursement.

    d.  Employees covered under this article will be eligible to be reimbursed for up to two (2) pre-approved courses per semester under the payment schedule in section (b). The employee will be eligible to be reimbursed the actual expenses incurred, which are to include tuition and lab fees only, not to exceed $1,500 per semester.

    e.  The maximum amount of tuition reimbursement shall be $1,500 per semester.

    f.  In order to receive said reimbursement, employees must show proof of satisfactory completion of the courses and receipts for the expenses within 45 days of the completion to the Tuition Reimbursement Committee through the Chief of Police. The Tuition Reimbursement Committee will review the submitted documents and shall have final say in the approval of the request for tuition reimbursement. Reimbursement will be within two (2) pay periods from the time the documents are submitted.

2.  Recognizing the benefits of Members' educational self-advancement, the City will adopt and implement a program rewarding those who have strived for and obtained a Masters level degree in a program approved by Training and the Police Chief. Employees with such an approved M.A., M.S. or M.B.A or equivalent degree shall receive $50 per month.

3.  Articles changes effective on September 30, 2003.

## ARTICLE 42

## DEATH BENEFITS

1.    Any full time sworn employee who dies as a result of any injury which was sustained on duty shall be presumed to have been unlawfully and intentionally killed in the performance of official duties.   The death benefit outlined in Florida State Statue 112.1904, or as amended, will be paid as soon as is possible to the listed beneficiary, or to the surviving children and spouse, or to the estate.

2.    When any full time sworn employee dies as a result of any injury sustained while on duty the employee's beneficiaries shall receive their leave balance payoff at the highest Police pay grade (36E) and step seven (7), plus loyalty step (3) as listed in the City of Coral Gables pay plan classification index, or similar, if amended, or replaced.

65

## ARTICLE 43

## PERIODS OF PROBATION

Periods of probation for bargaining unit members covered under this Agreement will be as follows:

1.  New hired bargaining unit members - twelve (12) months from the date that they are sworn in, or given the oath of office, by the Chief of Police or designee.

2.  Promoted bargaining unit members - six (6) months from the date that the member is promoted by the Chief of Police or designee.

    Extensions of the above probationary periods can be allowed up to a period of time not exceeding an additional six (6) months for new employees, and not exceeding an additional six (6) months for promoted bargaining unit member.

    Re-hired bargaining unit members will be considered as newly hired for the purpose of this Article, except that a bargaining unit member will serve a six (6) month probationary period, providing a normal probationary period has been successfully completed, prior to leaving the employment of the City and are rehired within two (2) years of departure date.

3.  Only promotional probationary bargaining unit members may utilize rights under Articles 12 and 13 of this Agreement.

66

ARTICLE 44

DRUG AND ALCOHOL POLICY

1.  The City and the Union recognize that employee substance and alcohol abuse may have an adverse impact on the City government, the image of City employees, and the general health, welfare and safety of employees and the general public at large. Accordingly, it is in the best interest of the parties to negotiate over the subject of drug and alcohol use and testing.

2.  The City and the (hereafter, the APolicy@) Union have negotiated a Drug and Alcohol-Free Workplace Policy and Work Rules pursuant to the provisions of the Florida Drug-Free Workplace Program, as provided in Section 440.102, Florida Statues (1991), and the regulations of the Florida Department of Labor and Employment Security, Division of Workers Compensation, et seq., Florida Administrative Code (1991). The Policy is incorporated herein and made a part of this Agreement. The City's Policy prohibits illegal drug use and alcohol abuse which might affect employees in the performance of their duties. The policy gives the City the right to test job applicants and employees under certain circumstances. All samples taken from a member who is ordered to submit to testing will be properly containerized and impounded. The impounded samples will not be released for testing until after the passing of the deadline for grieving the test, as outlined in subsection 7 g of this article. All employees must comply with the requirements of the Policy, and will be subject to appropriate disciplinary action up to and including discharge, as provided in the Policy in the event of non-compliance with the Policy.

3.  A copy of the Policy will be distributed to all current employees and will be given to all newly hired employees.

4.  In the event that legislation or administrative regulations are enacted which amend, supplement or alter in any way the requirements set forth in the Florida Drug-Free Workplace Program, or which may enable the City to reduce the cost or limit the increase in the cost of health, life, liability or workers compensation insurance premiums, the City may change the drug and alcohol policy, if such changes will enable the City to remain in compliance with state law and/or regulations or will result in a reduction in the cost or limit the increase in the cost of health, life, liability or workers compensation insurance premiums. The City will inform the Union in writing at least sixty (60) days prior to instituting any such change in the Policy, prior to any such implementation.

67

5.    The City and the Union agree that any issue or grievance arising from the implementation of the Policy shall be heard by an arbitrator, pursuant to the grievance and arbitration article of this Agreement (also see subsection 7).

6.    In the event that any conflict is determined to exist between the City's Drug and Alcohol Free Workplace Policy and Work Rules and the Florida Drug-Free Workplace Program, including Section 440.102, Florida Statutes and the accompanying regulations, it is agreed by the City and the Union that the City's drug and alcohol policy will be construed and/or revised, as necessary, to meet the statutory and regulatory requirements of the Florida Drug-Free Workplace Program.

7.    Special Expedited Arbitrations:

   a.    The President of the bargaining unit and the Employee Relations Director will pick at least two permanent umpires to hear Areasonable suspicion@ employee drug and alcohol grievances. The umpires will alternate, hearing only grievances where the bargaining unit or the member alleges that there was no reasonable suspicion to warrant being ordered to submit samples for testing. Said grievance will be limited to whether or not there was a reasonable belief based on reasonable suspicion to require the grievant to take the Alcohol/Controlled Substance test, and submit samples for same.

   b.    Except for the members annual medical screening, Alcohol/Controlled Substance test samples shall be tested unless the member chooses to grieve the submission of said samples for testing, or after grieving, the umpire rules that there was a reasonable suspicion to order the member to submit the samples for testing.

   c.    The cost of the umpire's decision and all necessary associated legal fees will be borne by the City if the umpire rules there was no reasonable suspicion to require the member to take the test. If the umpire rules that there was reasonable suspicion to require the member to take the test, the party (bargaining unit or member) who filed the grievance will pay for the costs of the umpire and all necessary associated legal fees.

   d.    It is anticipated that an expedited hearing would be held before the umpire under the American Arbitration Association rules of expedited arbitration, and no post hearing briefs will be filed. The grievance will be submitted directly to the Employee Relations Director for arbitration and will be heard no later than three (3) calendar days after the member is required to submit the samples for testing. The umpire will rule at the close of the hearing and an oral response from the umpire will be sufficient to settle the grievance.

   e.    The umpires will serve from year to year and shall be appointed by a letter jointly signed by the bargaining unit President and the Employee Relations Director. Should either the City or the bargaining unit wish to drop an umpire the umpire shall be notified and the parties shall agree on a replacement.

   f.    If the member is physically unable to file a grievance, the Union may elect to act on the members behalf by filing the Areasonable suspicion@ grievance for them.

   g.    If the member or Union chooses to file a Areasonable suspicion@ grievance, said grievance must be in writing. The grievance must be delivered, via fax or by hand, to the Employee Relations Directors office

68

on the same day as the test or no later than 5:00 PM of the next regularly scheduled work day of the Employee Relations Director.

h.    In cases that require this expedited arbitration, the umpire is given the authority to order the test sample to be immediately destroyed with no testing of same, or to order that the samples be released for testing as specified in the agreed upon City's Drug and Alcohol Free Workplace Policy and Work Rules, and or, this agreement. If the umpire rules that there was no reasonable suspicion to test the member, the samples will be ordered destroyed prior to any testing. If the umpire rules that there was reasonable suspicion to have the member tested, the samples will be released for testing.

## ARTICLE 45

### RETIREE HEALTH SAVINGS PLAN

The City of Coral Gables agrees to participate in the Retiree Health Savings Plan for the Coral Gables Fraternal Order of Police, Walter F. Stathers Memorial Lodge #7 in accordance with the terms and conditions of the Plan's Participation Agreement, a copy of which is on file with both parties. The City agrees to contribute to the Plan as follows:

1. Effective October 1, 2004, the City shall contribute annually for each eligible bargaining member, the amount of six-hundred-fifty ($650.00) plus administrative costs to the Retiree Health **Savings** Plan for the Coral Gables Fraternal Order of Police, Walter F. Stathers Memorial Lodge No. 7.

2. Within thirty days of the execution date of the Plan Agreement, the City shall contribute one-hundred percent (100%) of all bargaining members excess Sick Leave, known as the Sick Leave Bank, (accumulated hours in excess of the 400 hour Sick Leave cap), to the Plan, **annually,** at the conversion rate of one-hundred percent (100%) of the earned hourly value of Sick Leave. Upon separation of employment from the City for any reason, the City shall contribute one hundred percent (100%) of the eligible bargaining member's excess Sick Leave, known as the Sick Leave Bank, (accumulated hours in excess of the 400 hour Sick Leave cap) to the Plan at the conversion rate of one hundred percent (100%) of the earned hourly rate of Sick Leave.

3. Upon separation of employment from the City for any reason one-hundred percent (100%) of the eligible bargaining unit member's accumulated Sick Leave that would have been paid to the bargaining unit member had the City not participated in the Plan shall be contributed to the Plan at one-hundred percent (100%) of it's current value.

4. The final contribution to the Plan upon the eligible bargaining unit member's separation from City Service when added to the Participant's account balance valued immediately prior to the City contribution shall in no event exceed $75,000.00. Any Sick Leave or other compensated absence separation payment in excess of the final Plan contribution shall be directly paid to the bargaining unit member.

5. The Employee Organization shall have the right to choose any qualified investment plan for the purposes of the article.

## ARTICLE 46

### PSYCHOLOGICAL FITNESS FOR DUTY EXAMS

The City, through its Police Chief, may require bargaining unit members to submit to a psychological fitness for duty examination, only *with confirmation with the Assistant City Manager or the Employee Relations Director, and* when based upon reasonable suspicion that the employee is not fit for duty as a sworn law enforcement officer. The City's reasonable suspicion must be based on specific facts in order to justify the bargaining unit member being ordered to submit to the examination.

71

## ARTICLE 47

## CITY'S OBLIGATION

1. The City agrees that it will make every effort to pay monetary benefits negotiated in this bargaining Agreement, when due. The City will provide all bargaining unit members a copy of the Collective Bargaining Agreement within sixty (60) days after ratification.

2. Deferred Compensation money will be transferred within three (3) business days of the bargaining unit member's payday.

72

## ARTICLE 48

### DURATION OF AGREEMENT

This Agreement shall be effective from October 1, 2003, and shall remain in full force and effect until and including September 30, 2005, except as otherwise provided herein.

Upon the expiration of this Agreement, it shall automatically be renewed from year to year unless either party notifies the other in writing that it desires to change, alter or amend this Agreement in accordance with applicable law. In the event that such notice is given, negotiations shall proceed in accordance with such applicable law.

DATED this _____ day of _____, 2004.


_____
WALTER C. ROGERS, JR.
President
Coral Gables Fraternal
Order of Police, Lodge No. 7


_____
DAVID L. BROWN
City Manager
City of Coral Gables, Fla.

ATTEST:

By _____
WALTER FOEMAN        9/20/04
City Clerk

Authority of Resolution No. 2004-115
duly passed and adopted by the
Coral Gables City Commission on
_____ June 8 _____, 2003.


Approved as to Content:


_____
ELIZABETH HERNANDEZ
City Attorney

73

**08 – 20094**

%JS 44   (Rev. 11/05)   **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

PETER CUERVO, for and in behalf of himself and other employees similarly situated

**DEFENDANTS**

THE CITY OF CORAL GABLES

**CIV-MARTINEZ**

**(b)** County of Residence of First Listed Plaintiff   Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Kathleen Phillips
Phillips & Richard, P.A., 9360 SW 72 Street, Suite 283
Miami, FL 33173

Attorneys (If Known)

**MAGISTRATE BANDSTRA**

**(d)** Check County Where Action Arose: ✓ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff |
|---|---|

II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

✓ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*Miami- 08CV20094*
*Martinez/Teb*

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☒ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

✓ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**   (See instructions second page):

a) Re-filed Case ☐ YES ☒ NO      b) Related Cases ☐ YES ☒ NO

JUDGE _____   DOCKET NUMBER _____

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

U.S. Civil Statute: 29 U.S.C. § 201-19. Brief Description: Violation of overtime provisions

LENGTH OF TRIAL via   2   days estimated for (both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23      DEMAND $ _____      CHECK YES only if demanded in complaint:   JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   1/10/08

FOR OFFICE USE ONLY

AMOUNT $350.00   RECEIPT # 993D   Tip/

01/11/08